UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA HILL, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>PACIFIC MARITIME ASSOCIATION, et al.,<br><br>        Defendants. | Case No. 24-cv-00336-JSC<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS AND STRIKE PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 76 |

Plaintiffs allege Defendants failed to provide them sick pay and leave and retaliated against a subset of them in violation of California state and municipal laws. (Dkt. No. 88.)[1] Certain Defendants move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and move to strike portions of the complaint under Federal Rule of Civil Procedure 12(f). (Dkt. No. 76.) Having carefully reviewed the parties' briefing and with the benefit of oral argument on February 6, 2025, the Court GRANTS the motion to dismiss and DENIES the motion to strike.

## BACKGROUND

**I.    Complaint Allegations**

Plaintiffs are 16 current and former watchmen, longshore workers, and clerks who work or worked at "Ports in the State of California." (Dkt. No. 88 ¶¶ 6-21, 22.) Defendants are "employers, joint and/or co-employers of Plaintiffs and about 15,000 to 20,000 (and possibly more) other workers at Ports" in California who "are in the business of shipping, stevedoring and operating marine terminals." (*Id.* ¶ 22, 23.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  Defendant Pacific Maritime Association ("PMA") "is comprised of 70 member
2  companies" and is "operated and controlled by [the other named] Defendants"[2] whose executives
3  are on "its Board of Directors." (*Id.* ¶ 23.) PMA "handles 'integrated labor relations, human
4  resources and administrative services' for its member companies," provides "employees with job
5  training and safety training," negotiates with unions "for wages, employee benefits and conditions
6  of employment for workers employed as longshore, marine clerk, watchman/security, drivers, and
7  a number of other jobs." (*Id.* ¶¶ 23-24.) On each Plaintiff's "personnel documents," "paycheck
8  stubs and W-2 forms," another Defendant (not PMA) was identified as that Plaintiff's employer.
9  (*Id.* ¶ 23.)

Plaintiffs are among aggrieved employees who "made **hundreds of requests** to Defendants to pay their sick pay wages." (*Id.* ¶ 76.) In 2020, watchman Plaintiffs joined approximately 200-300 watchmen (not named Plaintiffs) to file "complaints with the California Labor Commissioner, Division of Labor Standards Enforcement, seeking unpaid wages and penalties from Defendant PMA and other Defendants, each of which was served on those Defendants who employed the Watchmen." (*Id.*) In 2022 and 2023, Defendants distributed to their employees "$70 million for the risks that these essential workers took by continuing to work during the COVID-19 Pandemic ('Pandemic Appreciation Pay')." (*Id.* ¶ 79.) But Defendants, retaliating against the Watchmen for filing California Labor Commissioner Complaints against them, excluded "all Watchmen from receiving this benefit." (*Id.*)

In July 2022 "Plaintiffs' counsel sent a letter to Defendants PMA and a number of other Defendants advising them they were violating the law." (*Id.* ¶ 76.) And in August 2023,

---

[2] The following are the other named Defendants in Plaintiffs' complaint: APM Terminals North America Inc.; ARM Terminals Pacific LLC; COSCO Shipping Terminals (North America) Inc.; Everglades Company Terminal, Inc.; Everport Terminal Services, Inc.; Fenix Marine Services, Ltd.; International Transportation Service, LLC; LBCT; Maersk A/S; Marine Terminals Corporation; Metro Cruise Services LLC; Metropolitan Stevedore Company; Pacific Terminal Service Company, LLC; Pasha Stevedoring & Terminals, Inc.; Pasha Stevedoring & Terminals, L.P.; Ports America Cruise, Inc.; SSA Containers, Inc.; SSA Marine, Inc.; SSA Pacific, Inc.; SSA Terminals, LLC; Stevedoring Services of America 811-WA; Total Terminals International, LLC; TRAPAC, LLC; West Basic Container Terminal, LLC; Yan Ming (America) Corporation; Yusen Terminals LLC; APS Stevedoring, LLC; Benicia Port Terminal Company; Innovative Terminal Services Inc.; Pacific Crane Maintenance Company, LLC; West Coast Terminal and Stevedore, Inc.; and Harbor Industrial Services Corporation.

Plaintiffs' counsel sent another letter to "PMA and other Defendants and the California Labor Workforce Development Agency ('LWDA')" again advising them of violations. (*Id.*) Finally, "[i]n July 2024, Plaintiffs amended the LWDA letter and served it on Defendants," but Defendants have not compensated Plaintiffs and others "for the sick pay penalties they are owed." (*Id.*) All Defendants "continue to employ thousands of workers at various Ports throughout California without compensating them for sick time as the law requires." (*Id.* ¶ 77.) "[T]he California Labor Commissioner has not held a single hearing on these claims." (*Id.* ¶ 179.)

"Defendants have deprived thousands of employees in the State of California, including in the Cities of San Francisco, Oakland, Los Angeles and San Diego, of sick pay wages for many years." (*Id.* ¶75.) Defendants "have failed to timely compensate employees with sick pay when they needed to take time off due to any reason set forth in the state and city laws," and further "failed to maintain a policy that provided employees with paid time off" for sick leave. (*Id.*)

## II. Procedural Background

Plaintiffs bring ten claims against all Defendants:

(1) California Private Attorneys General Act ("PAGA") claim for violation of California Labor Code §§ 2698, et seq.;

(2) violation of San Francisco's Sick Pay Ordinance;

(3) violation of Oakland Municipal Code §§ 5.92, et seq.;

(4) violation of Los Angeles Municipal Code §§ 187.00, et seq.;

(5) violation of San Diego Municipal Code §§ 29.0101, et seq.;

(6) Unlawful Retaliation under California Labor Code §§ 1102.5, 98.6 and Los Angeles Municipal Code § 187.06;

(7) violation of California Labor Code § 226 for noncompliant wage statements;

(8) violation of California Labor Code §§ 201-203 for untimely payment of wages upon termination;

(9) violation of California Labor Code § 204 for untimely payment of wages;

(10) violation of the UCL.

(*Id.*) And they seek to represent nine subclasses:

3

1    (1) San Francisco Sick Pay Class;

2    (2) Oakland Sick Pay Class;

3    (3) Los Angeles Sick Pay Class;

4    (4) San Diego Sick Pay Class;

5    (5) Watchmen Pandemic Appreciation Pay Class or Excluded Watchmen;

6    (6) Wage Statement (LC 226) Class;

7    (7) Waiting Time Penalties (LC 201-203) Class;

8    (8) LC 204 Class;

9    (9) UCL (Unfair Competition Law) Class.

(*Id.* ¶ 82.)

Plaintiffs filed in San Francisco Superior Court in 2023, and Defendants subsequently answered the complaint and removed the case to federal court on the same day. (Dkt. No. 1.) The case was assigned to a magistrate judge who scheduled the case and held an Initial Case Management Conference on June 13, 2024. (Dkt. Nos. 12, 72.) Plaintiffs filed their Second Amended Complaint ("SAC" or the "complaint") on October 2, 2024. (Dkt. Nos. 73, 88.) Defendants moved to dismiss the SAC on November 1, 2024. (Dkt. No. 76.) The case was subsequently reassigned to this Court pursuant to General Order 44. (Dkt. No. 87.)

Defendants move to dismiss the SAC for failure to allege all Defendants employed some or all of the named Plaintiffs, failure to allege each Defendant acted wrongfully, and failure to plead their various causes of action. (Dkt. No. 76.) Defendants also move to strike paragraph 88 of the complaint as well as all class allegations. (*Id.*)

**ANALYSIS**

**I.    Motion to Dismiss**

Defendants move to dismiss all causes of action because Plaintiffs fail to allege joint employer liability, specific wrongdoings by Defendants, and because the complaint generally fails to allege sufficient facts plausibly supporting each individual claim.

**A. Joint Employer Liability**

"At the pleadings stage, although the 'plaintiff is not required to conclusively establish that

4

defendants were her joint employers … [the plaintiff] must at least allege some facts in support of this legal conclusion.'" *Lesnik v. Eisenmann SE*, 374 F. Supp. 3d 923, 942 (N.D. Cal. 2019) (quoting *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2016 WL 270952 at *10 (N.D. Cal. Jan. 22, 2016) (quoting *Hibbs-Rines v. Seagate Technologies, LLC*, 08-cv-05430-SI, 2009 WL 513496 at *5 (N.D. Cal. Mar. 2, 2009))); *see also Naumann v. Central Admixture Pharmacy Services, Inc.*, 24-cv-00356-L-BGS, 2024 WL 4441080 at *2 (S.D. Cal. June 4, 2024) (quoting *Lesnik*, 374 F. Supp. 3d at 942); *Haralson v. United Airlines, Inc.*, 224 F. Supp. 3d 928, 938 (N.D. Cal. 2016) ("To be liable for the California wage and hour violations alleged here, United must have employed Haralson and the putative class.") (citations omitted). "The controlling case on joint employment in California is *Martinez v. Combs*." *Medina v. Equilon Ent., LLC*, 68 Cal. App. 5th 868, 874 (2021) (citations omitted).[3] *Martinez* held "to employ" under California law means "(a) to exercise control over the wages, hours, or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). While "[t]he first and third standards are self-explanatory," the second definition "is extraordinarily broad, reaching '*all* individual workers who can reasonably be viewed as '*working in the [hiring entity's] business*.'" *Medina*, 68 Cal. App. 5th at 874-75 (quoting *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903, 953 (2018) (quoting *Martinez*, 49 Cal. 4th at 69)).

Plaintiffs fail to allege facts plausibly supporting an inference all Defendants are their joint, or co-employers and are all therefore liable to all Plaintiffs. (Dkt. No. 88 ¶ 22.) Plaintiffs do not identify which Defendants employed which Plaintiffs and only state that each Plaintiff's paystub named a Defendant "as 'Employer'" but do not identify which Defendant was named on which Plaintiff's paystubs. (*Id.* ¶ 23.) The complaint thus fails to adequately allege any Defendant meets the *Martinez* standard.

Plaintiffs plead more specific facts as to PMA than any other Defendant, alleging it:

---

[3] "Although *Martinez* involved alleged minimum wage violations under California Labor Code § 1194, California courts have applied the *Martinez* definition of employment to causes of action arising under other sections of the Labor Code as well." *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 n.3 (N.D. Cal. 2015) (collecting cases).

5

   (1) "handles 'integrated labor relations, human resources and administrative services'"
relating to Plaintiffs' employment;

   (2) negotiates with the unions "for wages, employee benefits and conditions of employment for workers;"

   (3) "provides those employees with job training and safety training;"

   (4) "processes weekly payrolls" for them;

   (5) maintains fringe benefits and a 401(k) Plan for Plaintiffs;

   (6) "'submits daily work orders for waterfront labor'" which Plaintiffs fulfill.

(*Id.* ¶ 24.) But the complaint does not allege if any Plaintiff belongs to one of the unions PMA negotiates with, or if any Plaintiff was trained by PMA. The complaint alleges PMA handles fringe benefits, human resources, and submitted daily work orders for Plaintiffs. (*Id.*) In *Martinez*, the court held a defendant does not employ a worker if it lacks "the power to prevent plaintiffs from working" and another "had the exclusive power to hire and fire his workers, to set their wages and hours, and to tell them when and where to report to work." *Martinez*, 49 Cal. 4th at 70. Without allegations regarding which Defendants employ which Plaintiffs or whether PMA actually set wages and trained Plaintiffs, Plaintiffs do not properly plead an employee-employer relationship. Thus, Plaintiffs allegations as to PMA are insufficient to plausibly support an inference of a joint employment relationship.

   Plaintiffs also argue all Defendants may be liable as a single employer under the *Laird* "integrated enterprise" test. *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727 (1998), overruled on other grounds by *Reid v. Google*, 50 Cal. 4th 512 (2010). "Two corporations may be treated as a single employer" when considering "interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control." *Id.* at 737-38 (citations omitted). The complaint's allegations do not plausibly support an inference of such a relationship between any of the defendants, let alone all of them. As noted above, Plaintiffs do not allege which Defendants pay their wages or control their day-to-day functions. Plaintiffs do not allege all 33 Defendants are employers of all 16 Plaintiffs, but rather that each Plaintiff is employed by one or more Defendant(s) as well as PMA. (Dkt. No. 88 ¶¶ 22-

23, 25.)  Though Plaintiffs allege Defendants "operate[] and control[]" PMA, these conclusory allegations are insufficient to plausibly support an inference Defendants in fact do so and how this fact would necessarily mean they are *all* employers for *all* Plaintiffs.  (*Id.* ¶ 24.)  Instead, Plaintiffs only allege "[e]ach aforementioned Defendant is and/or was at all times relevant hereto Plaintiffs' co-employer, joint employer, and/or the presumed employer of Plaintiffs, identified on paycheck stubs, per Plaintiffs' personnel documents."  (*Id.* ¶ 59.)  Without more, the complaint's allegations do not plausibly support an inference any Defendant employed any Plaintiff.  *See, e.g. Haralson*, 224 F. Supp. 3d at 938 ("To be liable for the California wage and hour violations alleged here, United must have employed Haralson and the putative class.") (citations omitted).

Plaintiffs do not sufficiently allege an employer-employee relationship between themselves and Defendants and so cannot plead these labor violations against Defendants.  *See Lesnik*, 374 F. Supp. 3d at 942.  Therefore, the Court GRANTS Defendants' motion to dismiss on the grounds Plaintiffs fail to plausibly allege any Defendant employed any Plaintiff.

### B.  Allegations as to Each Defendant

"As a general rule, when a pleading fails 'to allege what role each Defendant played in the alleged harm,' this 'makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.'"  *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015) (quoting *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, No. 14-cv-02147-LHK, 2015 WL 5118509, at *10 (N.D. Cal. Aug. 31, 2015) (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011))).  Because "a complaint which 'lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2).'"  *Seeno v. Discovery Builders, Inc.*, No. 23-cv-04072-EJD, at *5 (N.D. Cal. Feb. 20, 2024) (cleaned up) (quoting *Muzooka*, 143 F. Supp. 3d at 1037).

Here, Plaintiffs lump together all Defendants in almost every allegation in the complaint.  The Court cannot ascertain which allegations are made as to which Defendants and what wrongdoing was allegedly committed by each Defendant.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain

1  statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant
2  fair notice of what the … claim is and the grounds upon which it rests.") (quoting *Conley v.*
3  *Gibson*, 355 U.S. 41, 47 (1957)).  Further, as explained *supra*, without alleging which Defendant
4  employed which Plaintiff, Plaintiffs cannot plausibly plead Defendants harmed them by failing to
5  provide sick leave, sick pay, or any other harm alleged.
6       Because Plaintiffs fail to plead individual wrongdoing by all Defendants, Defendants'
7  motion to dismiss is GRANTED.

### C.  PAGA Claim Based on California's Sick Leave Law

PAGA "provides civil penalties for the violation of underlying law."  *Chatman v. WeDriveU, Inc.*, 22-cv-04849-WHO, 2022 WL 15654244 at *12 (N.D. Cal. Oct. 28, 2022). Plaintiffs' PAGA claim is based on several labor violations, though Defendants move specifically to dismiss the PAGA claim based on violations of California Labor Code §§ 246 and 246.5.

Under § 246, California employees who work "for the same employer for 30 or more days within a year from the commencement of employment [are] entitled to sick days" accruing "at a rate of not less than one hour per every 30 hours worked."  And under § 246.5, employers must "[u]pon the oral or written request of an employee" provide sick days for "(1) Diagnosis, care, or treatment of an existing health condition of, or preventive care for, an employee or an employee's family member[] (2) For an employee who is a victim or whose family member is a victim [of domestic abuse]."

The deficiencies in Plaintiffs' complaint as to the employer-employee relationship require the Court dismiss Plaintiffs' PAGA claim based on paid sick leave violations.  Plaintiffs have not alleged which Defendants violated which Plaintiffs' rights by failing to provide sick leave or provide sick days under either § 246 or 246.5.  The complaint alleges Plaintiffs "took time off work without pay" and lists a number of reasons Plaintiffs took time off, (Dkt. No. 88 ¶ 91), and that all Defendants lacked a sick pay policy (*Id.* ¶ 76).  But the complaint does not allege how many hours/days Plaintiffs worked for the Defendants they complain denied them sick pay.  (*Id.*) Such threadbare allegations "do not indicate that Plaintiffs would have qualified for paid sick leave under Section 246" and as such this cause of action must be dismissed.  *Colopy v. Uber*

8

*Technologies, Inc.*, 19-cv-06462-EMC, 2020 WL 3544982, at *3 (N.D. Cal. June 30, 2020). Absent such allegations, the Court cannot determine whether or how Plaintiffs were harmed by each or any Defendant's conduct.

Plaintiffs' PAGA claim based on California Labor Code §§ 246 and 246.5 is DISMISSED with leave to amend.

### D. Failure to State Municipal-Law Based Claims

Plaintiffs bring claims under several municipal laws but fail to allege where they worked during the relevant period. (Dkt. No. 88 ¶¶ 6-21.) Each law protects workers who have worked a minimum number of hours within that municipality. *See* Oakland Municipal Code §§ 5.92, et seq.; Los Angeles Municipal Code §§ 187.00, et seq.; San Diego Municipal Code §§ 29.0101, et seq.; San Francisco Labor & Employment Code § 11.4. However, Plaintiffs have not alleged where any of them work or worked. Instead, Plaintiffs bring each local law claim on behalf of all Plaintiffs, regardless of where they worked because "one or more Plaintiffs worked in each of the cities for the minimum hours to assert a claim to sick pay." (Dkt. No. 77 at 10.) Without allegations as to which Plaintiffs worked in which cities, the Court cannot determine whether any Plaintiff has plausibly pled a claim under that city's law. Further, to the extent Plaintiffs allege Defendants are bound by each city's laws, they fail to allege which cities Defendants operate in or where these violations occurred *as to each Defendant*. *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.").

All claims based on municipal law are therefore DISMISSED with leave to amend.

### E. Whistleblower Retaliation

First, insofar as Plaintiffs allege a violation of Los Angeles Municipal Code §§ 187.06-188.08 as the basis for their retaliation claim, such claim is improperly pled for the same reasons discussed as to all municipal law claims.

Next, to state a prima facie whistleblower retaliation claim under California Labor Code § 1102.5, "a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the

9

two." *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287-88 (2006) (quoting *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000)). This means "a prerequisite to asserting a violation of Labor Code section 1102.5 is the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred." *Id.*

Plaintiffs fail to allege which Defendants employed Plaintiffs Hill and Johnson, and also fail to allege facts that would support an inference they have standing to sue Defendants who did not employ them, especially because Plaintiffs fail to allege what actions were taken by which Defendants. Plaintiffs do not allege which Defendants received the California Labor Commissioner complaints or the attorney letters they allege provide the basis for Defendants' knowledge of wrongdoing. (*Id.* ¶¶ 147-48.) And without these allegations, Plaintiffs cannot plausibly allege there was "a causal link" between the protected activity—submitting Labor Commissioner complaints—and the adverse employment action—excluding watchmen from receiving Pandemic Appreciation Pay. *Soukup*, 39 Cal. 4th at 287-88.

For the above reasons, Plaintiffs' whistleblower retaliation claim is DISMISSED with leave to amend.

### F. Unlawful Business Practices Based on California's Sick Leave Law

Plaintiff's UCL claim is predicated on violations of municipal laws, failure to pay Pandemic Appreciation Pay to all watchmen, and violations of California Labor Code §§ 201-204 for failure to pay sick pay wages. (Dkt. No. 88 ¶ 178.) Because Plaintiffs have not properly pled sick pay violations against specific Defendants or unlawful retaliation, the UCL claim premised on these violations is unsupportable.

As such, the Court DISMISSES Plaintiffs' UCL claim with leave to amend.

### G. Plaintiffs' Wage Statement Claim

Under California Labor Code § 226, employers are required to itemize nine categories of information in their employees' wage statements. Failure to comply entitles employees "to an injunction compelling compliance and an award of costs and reasonable attorney's fees," and employees who suffer injury "as a result of a knowing and intentional failure by an employer to comply with" these requirements is entitled to statutory penalties. *Naranjo v. Spectrum Security*

10

*Services, Inc.*, 15 Cal. 5th 1056, 1064 (2024); Cal. Labor Code § 226(e)(1). However, "inaccurate wage statements alone do not justify penalties; the plaintiffs must establish injury flowing from the inaccuracy." *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1334 (2018). In *Maldonado*, the California court explained:

> [W]hen there is a wage and hour violation, the hours worked will differ from what was truly earned. But only the absence of the *hours worked* will give rise to an inference of injury; the absence of accurate *wages earned* will be remedied by the violated wage and hour law itself … .

*Id.* at 1336-37. Thus, when an employer mistakenly underpays employees, they are entitled to their pay, as well as interest and attorney's fees. *Id.* at 1337 (citing Cal. Labor Code § 1194(a)). But in such circumstances, the law "does not mandate that they also receive penalties for the wage statements which accurately reflected their compensation under the rates at which they had worked at the time." *Id.*

Here, Plaintiffs do not allege facts that plausibly support an inference the wage statements injured Plaintiffs, let alone that any particular Defendant's wage statements injured any particular Plaintiff. Plaintiffs do not even allege which Defendants are named on which Plaintiffs' allegedly violative wage statements. Further, without alleging which Defendants received notification from Plaintiffs that they were violating the law, Plaintiffs have not plausibly alleged any Defendant was committing a knowing or intentional omission of § 226 information.

For these reasons, Plaintiffs' § 226 claims are DISMISSED with leave to amend.

### H. Waiting Time Penalties

California Labor Code §§ 201-203 require employers pay employees unpaid earned wages upon their termination. Plaintiffs Seals, Williams, and Green Jr. seek to bring this claim against all Defendants. But again, the same deficiencies arise. While it is true that "Plaintiffs have identified which of them are no longer employed," (Dkt. No. 77 at 19), Plaintiffs have not alleged which Defendants employed these particular Plaintiffs, and how Plaintiffs would have standing to sue Defendants who did not employ or terminate them.

As such, Plaintiffs' Eighth Cause of Action for violations of California Labor Code §§ 201-203 is DISMISSED with leave to amend.

### I. Untimely Payment of Wages During Employment

California Labor Code § 204 requires employers pay wages twice a month. Section 210 provides a private right of action to enforce violations of § 204. Cal. Labor Code § 210.

Plaintiffs' § 204 claim is improperly alleged for the same reasons stated above. Without allegations regarding which Defendants paid which Plaintiffs, it is impossible to determine how all Defendants are liable to all Plaintiffs for the same underpayment of wages. Further, courts regularly hold the mere underpayment of wages is insufficient to support a § 204 claim. *See Huynh v. Jabil Inc.*, No. 22-CV-07460-WHO, 2023 WL 1802417, at *4 (N.D. Cal. Feb. 7, 2023) (dismissing section 204 claim, citing "decisions of other judges in this District for the proposition that a plaintiff cannot assert a section 204 claim based only on alleged 'underpaid wages.'") (citing *Carter v. Jai-Put Enter. Inc.*, No. 18-CV-06313-DMR, 2020 WL 3545094, at *10 (N.D. Cal. June 30, 2020) (rejecting a section 204 claim because "a violation of section 204 cannot be premised solely on the claim that an employer underpaid wages"); *Frausto v. Bank of Am., Nat'l Ass'n*, No. 18-CV-01983-MEJ, 2018 WL 3659251, at *10 (N.D. Cal. Aug. 2, 2018) (explaining section 204 "simply regulates the timing of wage payments and does not provide for the payment of any particular type of wages or create any substantive right to wages")); *Scott v. Cintas Corp.*, No. 23-cv-05764-JSC, 2024 WL 1421277, at *5 (N.D. Cal. Apr. 2, 2024) (dismissing section 204 claim because the plaintiff did not allege the defendant failed to timely pay wages, only that it underpaid his wages). Plaintiffs here allege Defendants underpaid their wages by failing to provide sick pay, so they have failed to state a claim under § 204. (*See* Dkt. No. 88 ¶¶ 171 ("This cause of action is derivative of and wholly dependent upon the wage claims set forth for unpaid sick pay wages that remained unpaid.").)

For the foregoing reasons, Plaintiffs' ninth claim for violation of California Labor Code § 204 is DISMISSED with leave to amend.

### II. Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Rule functions to "avoid the expenditure of time and money that must arise from litigating spurious issues by

12

1  dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970,
2  973 (9th Cir. 2010) (citation omitted).  "Motions to strike are generally disfavored" and "should
3  only be granted if the matter sought to be stricken clearly has no possible bearing on the subject
4  matter of the litigation." *Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 755 (N.D. Cal.
5  2024) (citations omitted).

### A. Paragraph 88

Defendants move to strike SAC ¶ 88, where Plaintiffs allege Defendants are in violation of federal public policy as set out by Executive Order 13706 by failing to pay sick leave to its employees even though it contracts with the federal government. (Dkt. No. 88 ¶ 88.)  While Plaintiffs do not bring any claims against Defendants under the Executive Order, Defendants have not shown the material is redundant, impertinent, or scandalous. Fed. R. Civ. P. 12(f).  Further, Defendants fail to show that time and money would be unnecessarily expended were the paragraph to remain in Plaintiffs' complaint. *See Whittlestone*, 618 F.3d at 973.  The paragraph merely states federal public policy regarding sick pay and how Plaintiffs believe Defendants are violating that policy.  In a case about sick leave, such a paragraph is not irrelevant nor impertinent.

As such, Plaintiffs' motion to strike paragraph 88 of the SAC is DENIED.

### B. Class Allegations

Federal Rule of Civil Procedure 23 permits a court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  However, courts in this District do not generally consider motions to strike class allegations at the pleading stage. *See Fukaya v. Daiso California LLC*, 23-cv-00099-JSC, 2023 WL 3436092, at *4 (N.D. Cal. May 11, 2023); *see also In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 960-61 (N.D. Cal. 2018) ("Even courts that have been willing to entertain such a motion early in the proceedings have applied a very strict standard to motions to strike class allegations on the pleadings.  Only if the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." (cleaned up)).

Defendants move to strike all of Plaintiffs' class allegations as overbroad and

13

1  unascertainable.  At this juncture, Plaintiffs have not pled sufficient facts to support their class
2  claims, as noted above.  As such, the Court DENIES AS MOOT the motion to strike or dismiss
3  Plaintiffs' class claims at this time.

## CONCLUSION

Accordingly, Plaintiffs' complaint is DISMISSED with leave to amend for failure to state a claim upon which relief may be granted, that is, all claims against all Defendants are DISMISSED.  Further, the Court DENIES Defendants' motion to strike both paragraph 88 and the class allegations at this time.  Any third amended complaint shall be filed no later than February 27, 2025.  The Court sets a further case management conference for April 16, 2025 at 2:00pm via Zoom video.  A joint case management conference statement is due one week in advance.

This Order disposes of Docket No. 76.

**IT IS SO ORDERED.**

Dated: February 6, 2025

JACQUELINE SCOTT CORLEY
United States District Judge

14