Roxanne A. Davis, SBN 132128
Frank Hakim, SBN 173365
DAVIS*GAVSIE & HAKIM, LLP
100 Wilshire Boulevard, Suite 700
Santa Monica, California 90401
Telephone:  (310) 789-2240
Facsimile:   (310) 789-2249
Roxanne@DGHLawyers.com
Frank@DGHLawyers.com

Attorneys for Plaintiffs
PAMELA HILL, JERI STEWART, RHONDA JOHNSON,
SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON,
DERRICK YOUNG, CORY BROWN, STEPHEN JOHNSON,
DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS,
HAROLD GREEN, JR., DANIELLE THOMPSON,
OLANDO GRAVES, and KIMBERLY HUGHES, individually, on behalf of other aggrieved
employees, and on behalf of all similarly situated employees

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA HILL, JERI STEWART, RHONDA JOHNSON, SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON, DERRICK YOUNG, CORY BROWN, STEPHEN JOHNSON, DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS, and HAROLD GREEN, JR. individually, on behalf of other aggrieved employees pursuant to California Private Attorneys General Act of 2004, and PAMELA HILL, JERI STEWART, RHONDA JOHNSON, SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON, DERRICK YOUNG, CORY BROWN, STEPHEN JOHNSON, DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS, HAROLD GREEN, JR., DANIELLE THOMPSON, OLANDO GRAVES, and KIMBERLY HUGHES, individually, on behalf of all similarly situated employees; <br><br>      Plaintiffs, <br> vs. <br><br> PACIFIC MARITIME ASSOCIATION, a California corporation; APM TERMINALS | CASE NO.: 3:24-cv-00336- JSC <br><br> Assigned for all purposes to: <br> Judge Jacqueline Scott Corley <br><br> CLASS ACTION <br><br> PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO: (1) PERMIT LIMITED DISCOVERY, (2) SUBMIT SUPPLEMENTAL EVIDENCE AND (3) SUBMIT SUPPLEMENTAL BRIEFING BEFORE RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> [F.R.C.P. Rules 1, 56(d) and (e)] <br><br> Hearing Date: July 16, 2026 <br> Time: 10:00 a.m. <br> Ctrm: 8 – 19th Floor <br><br> 4AC Filed:  June 19, 2025 <br> Complaint Filed: October 10, 2023 <br> Trial: None set |

1

**NORTH AMERICA INC., a corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; EVERPORT TERMINAL SERVICES, INC., a corporation; FENIX MARINE SERVICES, LTD., a Limited Company; INTERNATIONAL TRANSPORTATION SERVICE, LLC, a Limited Liability Company; LBCT, LLC, a Limited Liability Company; MAERSK A/S, a corporation; MARINE TERMINALS CORPORATION, a corporation; METRO CRUISE SERVICES LLC, a California corporation; PACIFIC TERMINAL SERVICE COMPANY, LLC, a Limited Liability Company; PASHA STEVEDORING & TERMINALS, INC., a California corporation; PASHA STEVEDORING & TERMINALS, L.P., a California Limited Partnership; SSA CONTAINERS, INC., a corporation; SSA MARINE, INC., a corporation; SSA PACIFIC, INC., a corporation; SSA TERMINALS, LLC, a Limited Liability Company; STEVEDORING SERVICES OF AMERICA 811-WA, an unknown business entity; TOTAL TERMINALS INTERNATIONAL, LLC, a Limited Liability Company; TRAPAC, LLC, a Limited Liability Company; YUSEN TERMINALS LLC, a California Limited Liability Company; BENICIA PORT TERMINAL COMPANY, a California corporation; PACIFIC CRANE MAINTENANCE COMPANY, LLC, a Limited Liability Company; WEST COAST TERMINAL AND STEVEDORE, INC., a California corporation; and DOES 1 through 100, inclusive,**

**Defendants.**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 16, 2026, at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom 8-19th Floor of the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby do move the Court for leave to permit limited discovery for the purpose of obtaining

2

supplemental evidence, to file supplemental evidence and to permit supplemental briefing prior to the Court's ruling on Defendants' pending Motion for Summary Judgment.

Plaintiffs' motion is brought pursuant to Federal Rules of Civil Procedure ("F.R.C.P."), Rules 1, 56(d) and (e), the Court's inherent authority to control proceedings before entry of judgment, and Ninth Circuit authority requiring summary judgment proceedings to be resolved on a complete factual record with all reasonable inferences drawn in favor of the nonmoving party.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the declaration of Roxanne A. Davis, all documents on file with the Court, such other materials, argument and evidence as may be presented to the Court.

DATED:  June 3, 2026          DAVIS*GAVSIE & HAKIM, LLP


                              By:  /s/ *Roxanne A. Davis*
                                   **Roxanne A. Davis, Esq.**
                                   **Frank Hakim, Esq.**
                                   **Attorneys for Plaintiffs**

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION AND STATEMENT OF FACTS……………………………...………..……..4

II.  LEGAL STANDARD……………………………………………………………………12

   A. Federal Rule of Civil Procedure 56 Authorizes the Court to Permit Supplemental Evidence, And Courts Have Interpreted Cases as Requiring, Rather Than Permitting, Discovery…….12

III. NINTH CIRCUIT AUTHORITY FAVORS RESOLUTION OF SUMMARY JUDGMENT MOTIONS ON A COMPLETE RECORD………………………………………………...13

   A. Discovery Must Be Permitted Where Genuine Disputes of Material Fact May Exist……….13

   B. The Ninth Circuit Requires Liberal Treatment of Requests to Supplement or Develop the Record Before Summary Judgment……………………………………………………….14

IV.  THE COURT POSSESSES INHERENT AUTHORITY TO CONSIDER SUPPLEMENTAL MATERIALS PRIOR TO ENTRY OF JUDGMENT…………………………………………..15

V.   GOOD CAUSE EXISTS TO PERMIT SUPPLEMENTAL EVIDENCE AND BRIEFING...…15

VI.  THE COURT HAS DISCRETION TO CONSIDER SUPPLEMENTAL EVIDENCE BEFORE ISSUING ITS RULING……………………………………………………………….16

VII. DENIAL OF LEAVE RISKS PREMATURE ADJUDICATION OF FACTUAL ISSUES……17

VIII. CONCLUSION………………………………………………………………...…17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. Oregon Bureau of Labor,*

    122 F.3d 812 (9th Cir. 1997)……………………………………………………………….7

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242 (*1986*)……………………………………………………...…12,13

*Berkeley v. Home Ins. Co.,*

    68 F.3d 1409 (D.C.Cir.1995)……………………………………………………….13

*Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*

    323 F.3d 767 (9th Cir. 2003)…………………………………………………………12,13,17

*Celotex Corp. v. Catrett,*

    477 U.S. 317 (1986)……………………………………………………...…12,16

*Garrett v. City and County of San Francisco*

    818 F.2d 1515 (9th Cir. 1987)……………………………………………………….17

*In re Halpin,*

    566 F.3d 286 (2d Cir. 2009)…………………………………………………...…10

*In re M & S Grading, Inc.,*

    541 F.3d 859 (8th Cir. 2008)………………………………………………….10

*Landis v. North American Co.,*

    299 U.S. 248 (1936)…………………………………………………………...15

*Leslie v. Grupo ICA,*

    198 F.3d 1152 (9th Cir. 1999)………………………………………………...13,14

*Link* v. *Wabash R. Co.,*

    370 U.S. 626 (1962)………………………………………………………...…16

*Lore v. City of Syracuse,*

    N.D.N.Y.2005, 232 F.R.D. 155……………………………………………………….14

*Margolis v. Ryan,*

    140 F.3d 850 (9th Cir. 1998)……………………………………………………….14

PLTFS' NTC. OF MOT. & MOT. FOR LEAVE TO:
(1) PERMIT LTD DISCOV., (2) SUBMIT SUPP. EVID., &
(3) SUBMIT SUPP. BRIEFING BEFORE RULING ON DEFTS' MSJ
CASE NO. 3:24-CV-00336-JSC

*Martinez v. Combs,*

49 Cal.4th 35 (2010)……………………………………………………………………………7

*Massachusetts v. Morash,*

490 U.S. 107 (1989)………………………………………………………………………7,16

*Metabolife Int'l, Inc. v. Wornick,*

264 F.3d 832 (9th Cir. 2001)……………………………………………………………13,14,17

*Nidds v. Schindler Elevator Corp.,*

113 F.3d 912 (9th Cir. 1996)……………………………………………………………….14

*Nigro v. Sears, Roebuck and Co.,*

784 F.3d 495 (9th Cir. 2015)………………………………………………………………..13

*O'Toole v. Tofutti Brands, Inc.,*

D.N.J.2016, 203 F.Supp.3d 458………………………………………………………………14

*Program Engineering, Inc. v. Triangle Publications, Inc.,*

634 F.2d 1188 (9th Cir. 1980) …………………………………………………………….14,17

*Sames v. Gable,*

732 F.2d 49 (3d Cir.1984)…………………………………………………………………..13

*Schnidrig v. Columbia Machine, Inc.,*

80 F.3d 1406 (9th Cir. 1996) ……………………………………………………………….17

*Smart v. US LBM LLC,*

2025 WL 91178, *5 (N.D. Cal., January 14, 2025) …………………………………………...7

*Tolan v. Cotton,*

572 U.S. 650 (2014) ………………………………………………………………………..13

*Wichita Falls Office Assoc. v. Banc One Corp.,*

978 F.2d 915 (5th Cir. 1992) ……………………………………………………………….13

**Statutes**

29 U.S.C. §1103(a) …………………………………………………………………………..6

29 C.F.R. §2510.3-102(a)(1) ………………………………………………………………...6

Fed. R. Civ. P. 1 ......................................................................................................................12

iii

Fed. R. Civ. P. 56(d) ............................. ......................... .......................................12,13,17

Fed. R. Civ. P. 56(e) ............................. ......................... .......................................12

Labor Code §§245, et seq…….……………………………………………………...…7

Labor Code §245.5(b)(1)…….………………………………………………………….7

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND STATEMENT OF FACTS

Because the Court's insightful questions at oral argument identified certain factual and legal matters central to the payroll practice exemption analysis that went beyond the briefing, Plaintiffs respectfully request leave to conduct limited discovery and submit supplemental evidence and briefing before the Court rules on Defendants' Motion for Summary Judgment ("MSJ"). (ECF No. 173, taking the matter under submission). The requested supplemental evidence and briefing is and will be **narrowly tailored** to material legal and factual issues central to the pending motion, directed to (1) identifying non-ERISA plans that Defendants maintain, (2) clarifying how PSL can be paid to Dockworkers from general assets, (3) identifying the payor of Paid Sick Leave ("PSL") to Dockworkers when used, (4) confirming the status as "general assets" from which PSL is paid, (5) examples of other multiemployer groups that provide their employees with Paid Sick Leave, pursuant to state statutes or local laws, and how they do it, (6) Defendants' federal contractor status, and will assist the Court in evaluating whether genuine disputes preclude summary judgment on a complete evidentiary record. The interests of justice favor permitting supplementation because the Court has not yet ruled, the evidence and questions of law are material, the evidence exists, would prevent summary judgment, and Defendants will suffer little or no prejudice from the Court's consideration of the additional evidence. (Declaration of Roxanne A. Davis, submitted in support of this motion ("Davis Decl."), ¶3.)

Failing to permit Plaintiffs to supplement evidence and briefing, and/or granting summary judgment, will effectively leave Plaintiffs with no recourse and reward Defendants' violation of California and local Paid Sick Leave laws and deprive about 20,000 Dockworkers from receiving a basic wage to cover days they are unable to work due to sickness or doctor's appointments, or to take care of a loved one, that all other Californians have (including employees of PMA[1]).  (Davis Decl., ¶4.)

At the hearing on Defendants' Motion for Summary Judgment in the above matter on May 19, 2026, the Court identified 5 main issues for which Plaintiffs seek to provide supplemental evidence and briefing to show there is a genuine dispute of material fact (ECF No. 176, pp. 8, 11, 18, 25, 42-43) (Davis Decl., ¶5):

---

[1] William Bartelson, Vice President of PMA, testified in deposition that he receives PSL as an employee of PMA. (Davis Decl., Exhibit A, Deposition of William Bartelson, p. 64:7-8)

1. Supplemental evidence and briefing to correct counsel's answer to the Court's question about other "Non-ERISA Plans" that PMA maintains for employees and pays from general assets. Plaintiffs' counsel was unclear about what the Court meant by "non-ERISA plan" (ECF No. 176, 11:12-17[2]). This evidence and briefing is important and could affect the court's ruling on Defendants' MSJ because Plaintiffs can show PMA can provide PSL on behalf of its member companies, the same way PMA pays for Training, a non-ERISA benefit – from its operating account:

   a. **Training** – PMA provides paid training for Dockworkers. Safety and Training | PMA Training for Dockworkers is paid at the employees' regular hourly rate (see, e.g., Clerks' CBA, Local 63, Section 4.21) by PMA from its operating expenses, from its general assets, which is funded by Cargo Assessments. Page 47 of 2025 PMA Annual Report: Pacific Maritime Association - 2025 PMA Annual Report, Para. 3 states:

   "The PMA Board of Directors…approves PMA **Cargo Dues assessment rates that fund the operations of PMA**. The PMA portion also pays for operation of the Joint Port Labor Relations Committees' expenses (dispatch halls), **industry training programs**, legal settlement, and other industry expenses."

   Per PMA's By-Laws, Cargo tonnage is used to determine voting power in PMA (By-Laws, Article VI, page 11). Cargo dues (or assessments) are kept in an account (not a trust fund):

   "which account shall be used only for the **expenses of the corporation [PMA] in connection with or relating to the** negotiation, **execution, administration** and performance of contracts **affecting shore labor and other matters affecting the interests of members in connection with shore labor**, and a fair and reasonable percentage of overhead and general administrative and miscellaneous expense incurred for the benefit of the membership of the corporation as a whole. (PMA By-Laws, Article XIII, Section 6, pages 39-40).

   Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition on this issue. Plaintiffs also seek to provide

---

[2] The Court: "identify me a single non-ERISA benefit plan that applies to this type of situation…" Plaintiffs' counsel: "When you say 'a single non-ERISA,' I'm not sure that – you mean this employer – do they have some other benefits"?

5

supplemental briefing to show Training is provided to Dockworkers as a non-ERISA benefit, and PSL can be provided the same way.

    b. **<u>Workers' Compensation</u>** – likely paid for administration from PMA's general assets. Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition on this issue. Plaintiffs also seek to provide supplemental briefing to show this non-ERISA benefit is paid from PMA general assets, the same way PSL can be paid.

2. Supplemental evidence and briefing to clarify how PSL can be paid to Dockworkers from general assets,[3] (ECF No. 176, 18:13-15[4]), as an operating expense, which can be paid by PMA member employers directly or reimbursed to PMA by member companies.  This evidence and briefing is important and could affect the court's ruling on Defendants' MSJ because Plaintiffs can show PMA can provide PSL on behalf of its member companies as a payroll practice from its operating account. Plaintiffs propose 3 possibilities:

(1) PMA, as the "wage paying agent" (as they call themselves on Dockworker paystubs – see, *e.g.*, Declaration of Daryl Shaw, Exh. 1 - ECF No. 155-7 at pp.8-9 of 9), and/or joint employer (ECF No. 139, Fourth Amended Complaint, ¶¶22,27,28), or "employer of record" for wage paying purposes, can pay PSL from its general assets

---

[3] "General assets," as distinguished from ERISA-governed "plan assets," are the employer's regular business monies used to pay an outstanding debt, for operations, payroll, overhead, and other non-ERISA plan purposes. See, The Law Dictionary, <u>GENERAL ASSETS</u>. This is deduced from the definitions in ERISA statutes and regulations of "Plan assets" (29 C.F.R. §2510.3-102(a)(1)) and the requirement that plan assets are held in a trust. 29 U.S.C. §1103(a). In Department of Labor Regulations, "plan assets" are defined as "amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments **can reasonably be segregated from the employer's general assets**." 29 C.F.R. §2510.3-102(a)(1). ERISA requires that all plan assets be held in trust by one or more trustees, with limited exceptions for insurance contracts and policies issued by qualified insurance companies. 29 U.S.C. §1103(a). Accordingly, if monies are held by an employer <u>not</u> in a trust and are used for general operating expenses, they are general assets.

[4] The Court: "I think it comes down to how – how these benefits could be administered not in an ERISA plan…"

in its operating account and seek reimbursement from the member employers for the amounts spent on PSL for the actual PSL used during the week OR at a pro rata rate which is based on the employer's total payroll hours used per pay period (a "repayment agreement" as in *Alaska Airlines, Inc. v. Oregon Bureau of Labor*, 122 F.3d 812, 813-815 (9th Cir. 1997, citing *Massachusetts v. Morash*, 490 U.S. 107, 115-116 (1989)).

PMA could be considered a joint employer under California's Healthy Workplaces, Healthy Families Act of 2014, the State's Paid Sick Leave law, found at Labor Code §§245, et seq., defines "Employer" broadly under which PMA qualifies, responsible for providing PSL to employees of its member companies. Labor Code §245.5(b)(1).[5] PMA issues paychecks. PMA oversees dispatch of workers through the hiring hall. PMA functions like a staffing agency, as a joint employer. According to the California Supreme Court in *Martinez v. Combs*, a business is a joint employer if it meets any one of three IWC Wage Order definitions of "to employ." *Martinez v. Combs* (2010), 49 Cal.4th 35 (Control Over Wages, Hours, or Working Conditions suffices to make an entity an employer, as does direct or indirect control over pay). PMA has direct control over wages and is, thus, an employer. See also, *Smart v. US LBM LLC*, 2025 WL 91178, *5 (N.D. Cal., January 14, 2025) (Staffing agency was held to be joint employer for, *inter alia*, controlling wages).

Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition on the foregoing issues. Plaintiffs also seek to provide supplemental briefing to show these methods of paying PSL from PMA general assets are viable.

    b.   Alternatively, when a Dockworker needs to call out sick, PMA can invoice the member company for PSL for which the Dockworker would have worked

---

[5] " 'Employer' means any person employing another under any appointment or contract of hire and includes the state, political subdivisions of the state, and municipalities."

(determined per #3, below). The member company pays from its general assets to PMA's payroll account. PMA then pays the PSL to the Dockworker on his/her paystub. (ECF No. 163, 20:13-22)

Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition on the foregoing issues. Plaintiffs also seek to provide supplemental briefing to show these methods of paying PSL from PMA general assets are viable.

    c.  PMA member employers can pay PSL to Dockworkers when it is used directly from the member employer's general assets. Each member employer could report on the timecard, which is turned in to PMA weekly, when a Dockworker calls in sick. Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition on the foregoing issues. Plaintiffs also seek to provide supplemental briefing to show these methods of paying PSL from PMA general assets are viable.

3.  Supplemental evidence and briefing to clarify how PMA can determine which entity is the paying employer for a day a Dockworker calls out sick, so as to identify which employer will be charged for a Dockworker's used PSL (see, ECF No. 176, 8:13-14,16[6]). This evidence and briefing is important and could affect the court's ruling on Defendants' MSJ because Plaintiffs can show that it is possible to identify the paying employer for PSL purposes:

    a.  Steady Dockworkers work for one employer, so their PSL-paying employer is easily established (referenced in Plaintiffs' Opposition to Defendants' MSJ ("Pltfs' Opp."), 4:10-20).

    b.  Registered Walking Bosses, Foremen and Clerks are assigned jobs the day before – some for assignments which could last 5 or 7 days in a row. This makes the employer certain for that time period.

---

[6] The Court: "…let's say the previous week, one of the plaintiffs called in sick on Wednesday…Which employer is responsible for that?"

c. Registered Longshore workers can elect to work 2 to 7 days in a row for the same employer. This makes the employer certain for that time period.

d. Casual Longshore workers go to the dispatch hall to get their assignments, which are the jobs remaining after Registered Longshore workers have accepted their assignments.

e. Registered and Casual Watchmen call in daily to get their assignments.

Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition to explain how the dispatch process enables or can enable identifying the employer on a given day. Plaintiffs also seek to provide supplemental briefing to show the identity of a PMA member company employer is possible to ascertain on a given day.

4. The Court also asked for legal authority that states that when general assets of an employer are deposited into a payroll account with other employer monies, the monies maintain their status as "general assets" of each employer until the monies are disbursed. (ECF No. 176, 42:16 – 43:7)[7] Although Plaintiffs have presented evidence in the Opposition that William Bartelson, Vice President of PMA, stated in his declaration filed in support of Defendants' MSJ, ¶8 (ECF No. 147-1, pp. 5-6),  stating that Defendants' payroll account was basically a pass-through account which was used to collect general assets of each employer after invoicing them for their share of  employee work hours and payroll taxes due, and Plaintiffs' expert witness Kimberly I. McCarthy confirmed the employer monies remained employer general assets as long as they were "in a convenience account" (i.e., passthrough account, not a trust), and "trackable" to the employer (ECF No. 170-1, p. 34:1-7, 11-12.) Plaintiffs' counsel understood from the

---

[7] Plaintiffs' Counsel: "it is not disputed that when PMA invoices the employers for the hours that the employees have worked, including overtime, and send that invoice to each employer, that the employers pay that amount from their general assets,…to PMA, who has -- who then issues the paychecks --…-- through the passthrough account. And the passthrough account is still general assets, at least until --…-- the check goes out.
The Court: That's what you say. But you don't cite anything to support that.

hearing that this Court did not find the testimony adequate. Accordingly, Plaintiffs would like the opportunity to properly support the finding that employer monies sent to PMA for purposes of paying their payroll obligations remain the employer's general assets until the monies are paid out to the employees.

Defendants did not cite any legal authority disputing this logic or disputing the fact that PMA's payroll account consists of general assets of member company employers in the specified, trackable amounts for which PMA previously invoiced them. Payments by employers into a general operating account, and not a trust fund, remain the general assets of that employer while trackable to the employer, until they are paid out to the Dockworkers. We know this because the monies are either ERISA "plan assets" or "general assets," i.e., operating monies. The term "plan asset" is not defined in ERISA. ERISA provides that "'plan assets' means plan assets as defined by such regulations as the Secretary may prescribe." 29 U.S.C. §1002. These regulations "define the scope of 'plan assets' in two specific contexts: (1) where an employee benefit plan invests assets by purchasing shares in a company, 29 C.F.R. §2510.3–101, and (2) where contributions to a plan are withheld by an employer from employees' wages, 29 C.F.R. §2510.3–102."

With respect to <u>employer</u> contributions, however, the DOL takes the position, and courts have held, that employer contributions do not become plan assets until the contribution is made to the plan or trust. (DOL Field Assist. Bull. 2008-1 (Feb. 1, 2008); *In re Halpin*, 566 F.3d 286 (2d Cir. 2009); see also *In re M & S Grading, Inc.*, 541 F.3d 859 (8th Cir. 2008).)

Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition on the foregoing issues. Plaintiffs also seek to provide supplemental briefing to show the monies maintained in PMA's payroll or other account collected from member company employers are the general assets of each employer until paid out to employees.

(Davis Decl., ¶5)

5.    Supplemental evidence and briefing to provide the Court with examples of other multiemployer groups that provide their employees with Paid Sick Leave, pursuant to

10

state statutes or local laws, and how they do it. (ECF No. 176, 25:1-5)[8] Plaintiffs seek limited discovery to include interrogatories, requests for admissions and/or possibly depositions on this issue. Plaintiffs also seek to provide supplemental briefing to show other multiemployer groups provide their employees with PSL, and so could Defendants.

6.    Plaintiffs seek additional limited discovery to determine to what extent Defendants are government contractors, governed by Executive Order 13706, (September 7, 2015, 80 FR 54697) requiring Paid Sick Leave for all employees of government contractors. Per DOL's Fact Sheet, Paid Sick Leave is mandatory for Federal contractors ***including multiemployer*** groups. Fact Sheet: Final Rule to Implement Executive Order 13706, Establishing Paid Sick Leave for Federal Contractors (ECF No. 155, p.11 of 26, footnote 7.) ERISA would not preempt the federal law requiring PSL for all federal contractor employees. (4AC, ¶83) Plaintiffs seek limited discovery to include limited interrogatories, requests for admissions and/or possibly a deposition on this issue. Plaintiffs also seek to provide supplemental briefing to show Defendants must provide PSL to Dockworkers under federal law.

This information was not previously submitted and supplementation became necessary because, aside from #6, above, the Court identified at the May 19 hearing the foregoing issues which were not squarely addressed in the briefing. Plaintiffs believed they had submitted sufficient evidence and argument on which the Court could deny summary judgment, but the Court's questions revealed certain areas on which the Court needs further elucidation. The requested supplementation is limited in scope and intended to assist the Court in evaluating the evidentiary record accurately and completely. The evidence may materially affect whether triable issues exist, and the Court has not yet issued its ruling. (Davis Decl., ¶6)

The Ninth Circuit repeatedly has instructed that summary judgment is disfavored where the factual record remains incomplete or where additional evidence could affect the existence of genuine

---

[8] Plaintiffs' Counsel: …many employers provide sick pay as a payroll practice.
The Court: Yes, many single employers do. But you can't identify me a single employer in this industry that does, given the very unique nature of this industry.

11

disputes of material fact. The requested supplementation is narrow, timely, and directed solely toward ensuring adjudication on the merits based upon a complete record. (Davis Decl., ¶7)

Because the Court has not yet ruled, and because Defendant will suffer no meaningful prejudice, the interests of justice strongly favor permitting supplementation of the record.

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 56 Authorizes the Court to Permit Supplemental Evidence, And Courts Have Interpreted Cases as Requiring, Rather Than Permitting, Discovery.

District courts possess broad discretion to permit supplemental filings and additional evidence before ruling on summary judgment motions. See Federal Rule of Civil Procedure 56(e), which states in pertinent part:

> "If a party fails to properly assert an assertion of fact or fails to properly address another party's assertion of facts, as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact…"

See also F.R.C.P. Rule 1 (Rules should be construed to secure the **just** determination of every action). Federal Rule of Civil Procedure 56(e) expressly authorizes district courts to permit parties to supplement factual showings where necessary.

Additionally, where facts essential to justify the opposition may require further development, Rule 56(d) authorizes appropriate relief to ensure a fair adjudication of summary judgment issues.

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Courts in the Ninth Circuit routinely recognize that summary judgment should not be decided on an incomplete factual record where additional evidence may materially affect the outcome. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment appropriate only where there is no genuine dispute of material fact); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, in in *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation* (9th Cir. 2003) 323 F.3d 767, 773–774, the Ninth Circuit cited with approval previous holdings in favor of

12

permitting discovery essential to opposing summary judgment, noting that the Supreme Court interpreted F.R.C.P. Rule 56(d) as requiring such discovery in these circumstances:

> *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 846 (9th Cir.2001) ("…Although Rule 56(f) [now 56(d)] facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, **the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery** 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'," citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see also Berkeley v. Home Ins. Co.,* 68 F.3d 1409, 1414 (D.C.Cir.1995) (describing "the usual generous approach toward granting Rule 56(f) motions"); *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d 915, 919 n. 4 (5th Cir.1992) (Rule 56(f)-based "continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course…"); *Sames v. Gable,* 732 F.2d 49, 52 (3d Cir.1984) (same).

In *Burlington Northern Santa Fe R. Co., supra,* the Ninth Circuit court reversed summary judgment and permitted the requested discovery.

In this case, since Plaintiffs were unaware of the Court's questions seeking information beyond the briefing until the hearing date, and Plaintiffs diligently filed this motion as soon thereafter as practical, this Court should permit Plaintiffs to conduct the requested discovery and submit the supplemental briefing.

## III.  NINTH CIRCUIT AUTHORITY FAVORS RESOLUTION OF SUMMARY JUDGMENT MOTIONS ON A COMPLETE RECORD

### A.  Discovery Must Be Permitted Where Genuine Disputes of Material Fact May Exist.

In *Metabolife Int'l, Inc., supra,* the Court held that "the Supreme Court has restated the rule [FRCP 56(d)] as requiring, rather than merely permitting, discovery, citing *Anderson, supra*. 264 F.3d at 846. The Supreme Court and Ninth Circuit repeatedly have emphasized that courts may not weigh evidence or resolve credibility disputes at summary judgment. *See, Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). *See also, Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (courts may not improperly weigh evidence or fail to credit evidence favoring the nonmovant).

The Ninth Circuit similarly has held that courts must refrain from resolving factual disputes or making credibility determinations on summary judgment. *See Nigro v. Sears, Roebuck and Co*., 784 F.3d 495, 497 (9th Cir. 2015) ("[T]he district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature."). *See also, Leslie v. Grupo ICA*, 198

13

F.3d 1152, 1158 (9th Cir. 1999) (summary judgment improper where evidence supports differing factual inferences).

Because the supplemental evidence sought bears directly upon disputed material facts, consideration of the evidence is necessary to ensure compliance with these principles.

**B.  The Ninth Circuit Requires Liberal Treatment of Requests to Supplement or Develop the Record Before Summary Judgment.**

The Ninth Circuit has reversed grants of summary judgment where district courts prematurely cut off factual development. *Metabolife International, Inc., supra,* 264 F.3d at 850 (Reversing the district court's decision not to allow Metabolife discovery under Federal Rule of Civil Procedure 56(f) because Metabolife identified and requested discovery of probative information). *See also, Program Engineering, Inc. v. Triangle Publications, Inc.*, 634 F.2d 1188, 1193 (9th Cir. 1980) (summary judgment should not be granted where discovery remains incomplete – "When the party opposing a motion for summary judgment cannot present 'facts essential to justify his opposition" to the motion, Fed.R.Civ.P. 56(f) authorizes the party to submit an affidavit stating his reasons. The court then has the discretion to order a continuance to permit discovery…" [Citations omitted.])

In *Nidds v. Schindler Elevator Corp.* (9th Cir. 1996) 113 F.3d 912, 921, "…[T]he court postponed ruling on the summary judgment motion for over a year to give Nidds time to take three depositions."

Further, in *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998), the Ninth Circuit recognized that district courts possess discretion to permit supplementation of the record before ruling on summary judgment.

In *O'Toole v. Tofutti Brands, Inc.,* D.N.J.2016, 203 F.Supp.3d 458, the court held that additional discovery was warranted rather than issuing a ruling on employer's motion for summary judgment in an employee's suit against company and its chief executive officer (CEO) alleging sex discrimination and retaliation. In *Lore v. City of Syracuse*, N.D.N.Y.2005, 232 F.R.D. 155, a female police officer who claimed she was treated differently than other sergeants at city's police department because of her sex was entitled to additional discovery prior to ruling on city's summary judgment motion.

Thus, these authorities support granting Plaintiffs leave to conduct limited discovery and supplement the record prior to disposition of Defendants' motion.

14

## IV.  THE COURT POSSESSES INHERENT AUTHORITY TO CONSIDER SUPPLEMENTAL MATERIALS PRIOR TO ENTRY OF JUDGMENT

Independent of Rule 56, federal courts possess inherent authority to manage proceedings and consider supplemental submissions prior to issuing rulings. *See Landis v. North American Co*., 299 U.S. 248, 254 (1936) (district courts possess inherent authority to control disposition of cases on their dockets with economy of time and effort).

District courts in the Ninth Circuit routinely exercise this authority to permit supplemental briefing or evidence where doing so aids accurate adjudication and causes no prejudice. Because no ruling has yet issued, the Court retains full discretion to consider supplemental materials in the interests of justice.

## V.  GOOD CAUSE EXISTS TO PERMIT SUPPLEMENTAL EVIDENCE AND BRIEFING

Good cause exists because the supplemental evidence and briefing directly concerns disputed material facts and legal questions which the Court identified during oral argument that are or may be relevant to Defendants' MSJ, including:

(1)   Non-ERISA plans that Defendants maintain;

(2)   How PSL can be paid to Dockworkers from general assets;

(3)   The manner to determine which entity would pay Dockworkers PSL when it is used;

(4)   Retaining the status as "general assets" when PSL is collected from PMA member companies;

(5)   Examples of other multiemployer groups that provide their employees with Paid Sick Leave pursuant to state statutes or local laws, and how they do it.

(Davis Decl., ¶8)

At the May 19 hearing, the Court indicated the existing evidence presented may be insufficient on the foregoing matters. The requested discovery, as forth above, is narrowly tailored to those issues. The evidence likely exists. The evidence is material to a genuine dispute, i.e., to show that Defendants can provide PSL as a payroll practice, an exemption to ERISA preemption. It is undisputed that Defendants lack a PSL policy or practice or ERISA plan (ECF No. 176, 24:6-10)[9], there is no ERISA

---

[9] Plaintiffs' Counsel: -- no PSL plan has been created or funded by the defendants in this case to provide paid sick leave for the plaintiffs. The Court: Correct. Undisputed. Undisputed. Not a dispute.

15

plan to which PSL relates. *Morash*, *supra*, at 107,111. The request is diligent rather than tactical delay, made just two weeks after the hearing. (Davis Decl., ¶8)

Further, the supplemental evidence directly concerns disputed material facts relevant to Defendants' motion as the Court took issue with the logistics of administering the PSL policy. Evidence on some of these issues was not previously submitted and supplementation became necessary because the Court raised these questions at the MSJ hearing and discounted the declaration and deposition of Plaintiffs' expert. The requested supplementation is limited in scope and intended to assist the Court in evaluating the evidentiary record accurately and completely. The evidence may materially affect whether triable issues exist. The Court has not yet issued its ruling. The requested supplementation is narrow and limited. Defendant will suffer little or no prejudice from consideration of the supplemental materials. Therefore, good cause exists.  (Davis Decl., ¶9)

The Ninth Circuit consistently favors decisions on the merits and resolution of cases based upon complete factual records rather than technical omissions. *See Celotex Corp., supra,* 477 U.S. at 326 (nonmovant must have notice and opportunity to present evidence).

Because no final order has yet issued, the summary judgment motion remains under submission and the court retains discretion to permit targeted supplementation before adjudicating the merits. (Davis Decl., ¶10)

## VI.   THE COURT HAS DISCRETION TO CONSIDER SUPPLEMENTAL EVIDENCE BEFORE ISSUING ITS RULING

Federal courts possess inherent authority to consider supplemental filings before entry of judgment in order to ensure decisions are based on a complete record. Courts regularly exercise discretion to permit supplemental authority and evidence where doing so aids resolution of dispositive motions and does not unfairly prejudice the opposing party. In deciding whether to admit supplemental evidence after the hearing but before ruling, courts commonly rely on the principle that a district court retains jurisdiction and discretion to reopen briefing, permit supplemental filings, or allow further factual development at any time before entry of judgment. See *Dietz v. Bouldin* 579 U.S. 40, 45 (2016) (Recognizing federal courts' inherent powers "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Link* v. *Wabash R. Co.*, 370 U. S. 626 –631," so as to be a "reasonable response to the problems and needs" confronting the court's fair administration of justice.)

16

In *Program Engineering, Inc*., *supra,* 634 F.2d at 1193, the Ninth Circuit ruled the district court has discretion to continue summary judgment proceedings to permit discovery. In *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518-1519 (9th Cir. 1987), the court held that summary judgment was generally inappropriate where the party has not had a full opportunity to conduct discovery.

Rule 56(d) should be applied with a spirit of liberality. See also, *Burlington Northern Santa Fe Railroad Co., supra,* 323 F.3d at 773-773*; Metabolife International, Inc., supra,* 264 F.3d at 846, 850; *Committee for the First Amendment v. Campbell,* 962 F.2d 1517,  (10th Cir. 1992) ("Even in the absence of a properly supported request under Rule 56(f) [now (d)], a district court may, in the interest of justice, allow a party additional time to marshal what evidence he does have in opposition to a summary judgment motion. See 6 Moore's Federal Practice p. 56.") Consideration of the supplemental evidence promotes adjudication on the merits and judicial efficiency if it can avoid an appeal to the Ninth Circuit.

## VII.    DENIAL OF LEAVE RISKS PREMATURE ADJUDICATION OF FACTUAL ISSUES

Refusing supplementation before issuance of a ruling could result in adjudication based upon an incomplete factual record and risks improper resolution of disputed factual issues at the summary judgment stage. The Ninth Circuit repeatedly has cautioned that summary judgment should be used carefully where intent, motive, credibility, or disputed factual inferences are implicated. *See Schnidrig v. Columbia Machine, Inc*., 80 F.3d 1406, 1410 (9th Cir. 1996) ("credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions"). Permitting supplementation therefore promotes fairness, accuracy, and judicial economy.

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant leave to conduct limited discovery, file supplemental evidence and supplemental briefing prior to the Court ruling on Defendants' MSJ in considering this important matter that will affect about 20,000 Dockworkers who do not receive PSL when they are unable to work due to sickness or doctor's appointments, or to take care

///

///

///

17

of a loved one, a right which all other California employees have (including PMA employees).

Respectfully submitted,

DATED:  June 3, 2026          DAVIS*GAVSIE & HAKIM, LLP

                              By:   /s/ *Roxanne A. Davis*
                                    Roxanne A. Davis, Esq.
                                    Frank Hakim, Esq.
                                    Attorneys for Plaintiffs

18