SEYFARTH SHAW LLP
Jesse L. Miller (SBN 183229)
jmiller@seyfarth.com
Taylor D. Horn (SBN 329435)
thorn@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823

SEYFARTH SHAW LLP
Ian H. Morrison (Appearing Pro Hac Vice)
imorrison@seyfarth.com
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000

Attorneys for Defendants
PACIFIC MARITIME ASSOCIATION, et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA HILL, JERI STEWART, RHONDA JOHNSON, SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON, DERRICK YOUNG, CORY BROWN, and STEPHEN JOHNSON, DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS, and HAROLD GREEN, JR. individually, on behalf of other aggrieved employees pursuant to California Private Attorneys General Act of 2004, and on behalf of all similarly situated employees, and PAMELA HILL, JERI STEWART, RHONDA JOHNSON, SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON, DERRICK YOUNG, CORY BROWN, STEPHEN JOHNSON, DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS, HAROLD GREEN, JR., DANIELLE THOMPSON, OLANDO GRAVES, and KIMBERLY HUGHES, individually, on behalf of all similarly situated employees; <br><br> Plaintiffs, <br><br> v <br><br> PACIFIC MARITIME ASSOCIATION, a California corporation; APM TERMINALS NORTH AMERICA INC., a corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; COSCO SHIPPING | Case No. 3:24-cv-00336-JSC <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO: (1) PERMIT LIMITED DISCOVERY, (2) SUBMIT SUPPLEMENTAL EVIDENCE AND (3) SUBMIT SUPPLEMENTAL BRIEFING BEFORE RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Date:       July 16, 2026 <br> Time:       10:00 a.m. <br> Location:  Courtroom 8—19th Floor <br> Judge:     Hon. Jacqueline Scott Corley |

DEFENDANTS' OPPOSITION TO MOTION FOR LEAVE
Case No. 3:24-cv-00336-JSC

TERMINALS (NORTH AMERICA) INC., a California corporation; EVERGLADES COMPANY TERMINAL, INC., a corporation; EVERPORT TERMINAL SERVICES, INC., a corporation; FENIX MARINE SERVICES, LTD., a Limited Company; INTERNATIONAL TRANSPORTATION SERVICE, LLC, a Limited Liability Company; LBCT, LLC, a Limited Liability Company; MAERSK A/S, a corporation; MARINE TERMINALS CORPORATION, a corporation; METRO CRUISE SERVICES LLC, a California corporation; METROPOLITAN STEVEDORE COMPANY, a California corporation; PACIFIC TERMINAL SERVICE COMPANY, LLC, a Limited Liability Company; PASHA STEVEDORING & TERMINALS, INC., a California corporation; PASHA STEVEDORING & TERMINALS, L.P., a California Limited Partnership; PORTS AMERICA CRUISE, INC., a corporation; SSA CONTAINERS, INC., a corporation; SSA MARINE, INC., a corporation; SSA PACIFIC, INC., a corporation; SSA TERMINALS, LLC, a Limited Liability Company; STEVEDORING SERVICES OF AMERICA 811-WA, an unknown business entity; TOTAL TERMINALS INTERNATIONAL, LLC, a Limited Liability Company; TRAPAC, LLC, a Limited Liability Company; WEST BASIN CONTAINER TERMINAL, LLC, a Limited Liability Company; YANG MING (AMERICA) CORPORATION, a corporation; YUSEN TERMINALS LLC, a California Limited Liability Company; APS STEVEDORING, LLC, a Limited Liability Company; BENICIA PORT TERMINAL COMPANY, a California corporation; INNOVATIVE TERMINAL SERVICES INC., a California corporation; PACIFIC CRANE MAINTENANCE COMPANY, LLC, a Limited Liability Company; WEST COAST TERMINAL AND STEVEDORE, INC., a California corporation; HARBOR INDUSTRIAL SERVICES CORPORATION, a California corporation; and DOES 1 through 100, inclusive,

                    Defendants.

---

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.......................................... 1

    A.   Plaintiffs sue in state court in October 2023, Defendants remove the action in January 2024, discovery opens as of June 2024, and Defendants make clear well in advance that they intend to move for summary judgment based on ERISA preemption. .................................................................... 1

    B.   Discovery opens in June 2024, and Defendants produce more than 14,000 pages of documents, including all of the documents they relied on in their ERISA-Preemption MSJ. ................................................................................ 2

    C.   Defendants file the ERISA MSJ in October 2025, Plaintiffs oppose in January 2026, and Plaintiffs do not request a continuance before the May 19, 2026 hearing. ............................................................................................ 3

III.  LEGAL STANDARDS....................................................................................... 4

IV.   ARGUMENT ...................................................................................................... 4

    A.   Plaintiffs' Motion is untimely because Plaintiffs filed it only after the hearing on Defendants' ERISA MSJ. ...................................................... 4

    B.   Plaintiffs had ample opportunity to obtain the discovery they now seek. ............. 6

    C.   Plaintiffs' requested discovery concerns issues already presented and, in any event, does not satisfy Rule 56(d). ................................................................. 7

        1.   "Identifying non-ERISA plans that Defendants maintain"........................ 7

        2.   "Clarifying how PSL can be paid to Dockworkers from general assets"................................................................................................. 9

        3.   "Identifying the payor of PSL to Dockworkers when used"...................... 9

        4.   "Confirming the status as 'general assets' from which PSL is paid" ....... 10

        5.   "Examples of other multiemployer groups that provide their employees with Paid Sick Leave"................................................................. 11

        6.   "Defendants' federal contractor status" ..................................................... 11

    D.   Rule 56(e) does not grant Plaintiffs a post-hearing do-over. .............................. 12

V.    CONCLUSION................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashton-Tate Corp. v. Ross*,
916 F.2d 516 (9th Cir. 1990)..........................................................................................4, 5

*Big Lagoon Rancheria v. California*,
789 F.3d 947 (9th Cir. 2015)................................................................................................6

*Dodson v. Munirs Co.*,
No. CIV. S-13-0399 LKK, 2013 WL 4828597 (E.D. Cal. Sept. 9, 2013)..............................5

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
525 F.3d 822 (9th Cir. 2008)...........................................................................................4, 7

*Gonzalez v. Garibay*,
No. 09-CV-1080 W (MDD), 2012 WL 12875366, at *3 (S.D. Cal. Aug. 1,
2012) ....................................................................................................................................5

*In re Jacoby*,
No. 2:18-AP-01117-MT, 2021 WL 6882437 (C.D. Cal. Dec. 29, 2021) ...............................5

*Lemberg v. JPMorgan Chase Bank, N.A.*,
No. 17-CV-05241-JSC, 2019 WL 1975441 (N.D. Cal. Apr. 16, 2019) (Corley,
J. ) ........................................................................................................................................6

*Mackey v. Pioneer Nat'l Bank*,
867 F.2d 520 (9th Cir. 1989)...............................................................................................4

*Steffen v. City & Cnty. of San Francisco*,
No. 17-CV-06396-DMR, 2020 WL 1082637 (N.D. Cal. Mar. 6, 2020) ...............................5

*Stevens v. CoreLogic, Inc.*,
899 F.3d 666 (9th Cir. 2018).................................................................................................7

*Tatum v. City & Cnty. of San Francisco*,
441 F.3d 1090 (9th Cir. 2006)...............................................................................................7

**Statutes**

29 U.S.C. § 1002(1) ......................................................................................................................8

33 U.S.C. §§ 901 *et seq.*...............................................................................................................8

**Other Authorities**

Rule 56(c)....................................................................................................................................12

Rule 56(d) ............................................................................................................................*passim*

Rule 56(e)...............................................................................................................................12, 13

## I.    INTRODUCTION

Plaintiffs fully litigated their summary-judgment motion through hearing first and only now seek relief under Rule 56(d). This is backwards. From the inception of this case, Plaintiffs Defendants asserted an ERISA-preemption defense. Plaintiffs requested and received an extended briefing schedule to take discovery, filed a full opposition, including two "expert" and several plaintiff declarations, filed an amended opposition several months later, and fully argued the motion without ever claiming essential facts were unavailable to them. Only after the Court's questions highlighted the gaps in Plaintiffs' payroll-practice theory did Plaintiffs seek to reopen discovery and file another brief. Rule 56(d) does not allow such a sequence.

Plaintiffs' motion should be denied. It is untimely because Rule 56(d) relief must be sought before the summary-judgment hearing. It is unsupported because Plaintiffs do not identify specific facts that exist and would preclude summary judgment. Further, it rests on a false premise that the *Court* "identified certain factual and legal matters central to the payroll practice exemption analysis that went beyond the briefing." ECF No. 177 at 8:4. In fact, at the hearing, the Court tested whether Plaintiffs had support for the payroll-practice theory they had already fully briefed in their opposition papers. Thus, Plaintiffs' motion is not a request for "discovery where the non-moving party has not had the opportunity to discover information that is essential to its opposition." *Id.* at 13:4-5. Rule 56(d) does not allow a party to use the give-and-take of the Court's questions at oral argument as a roadmap to rebuild its opposition.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

**A.    Plaintiffs sue in state court in October 2023, Defendants remove the action in January 2024, discovery opens as of June 2024, and Defendants make clear well in advance that they intend to move for summary judgment based on ERISA preemption.**

On October 19, 2023, Plaintiffs sued Defendants in the Superior Court of the State of California, County of San Francisco. *See* ECF No. 1. On January 19, 2024, Defendants removed the action to this Court pursuant to the Class Action Fairness Act. *See id.*

Defendants placed Plaintiffs on notice from the outset that ERISA preemption would be a principal defense. Before removing, Defendants filed their answer in state court, asserting ERISA

preemption as a defense. *See id.* at 116. In the Parties' Joint Case Management Conference Statement for the initial case management conference, filed on April 11, 2024, Defendants reiterated, "some or all of Plaintiffs' claims are preempted by [ERISA]." *See* ECF No. 48 at 7:20–22. In another Joint Case Management Statement, filed on April 24, 2025, Defendants specifically stated they intended to move for summary judgment based on ERISA preemption before Plaintiffs moved for class certification. *See* ECF No. 129 at 15:11–20. Defendants' counsel then informed Plaintiffs' counsel that Defendants would move for summary judgment based on ERISA preemption in October 2025. Declaration of Jesse L. Miller ("Miller Decl."), ¶ 4. Plaintiffs requested that their opposition deadline be set for January 30, 2026 so they could "obtain discovery and take depositions," and stated they would seek to modify that deadline if they needed additional time "to get the necessary discovery to oppose the motion." *Id.*, Ex. A. Defendants agreed, and the parties jointly stipulated to Plaintiffs' proposed schedule, which the Court granted. *See* ECF Nos. 145, 148; Miller Decl., ¶ 4.

**B.      Discovery opens in June 2024, and Defendants produce more than 14,000 pages of documents, including all of the documents they relied on in their ERISA-Preemption MSJ.**

Discovery has been open and active since June 2024. On June 13, 2024, following an initial case management conference, the Court issued a case management order stating, "Discovery is open and not bifurcated." *See* ECF No. 71. Discovery remains open.

In August 2024, Plaintiff propounded interrogatories and requests for production of documents. *See* Miller Decl., ¶ 7. Between October 2024 and July 2025, Defendants produced more than 14,000 pages of documents. *See id.* Those productions included each Plaintiff's personnel file and wage reports, as well as all the documents that Defendants later relied on in their ERISA-preemption MSJ, including the plan documents and trust agreements for the existing ERISA plans, the collective bargaining agreements, and various other documents reflecting the multi-employer, interchangeable nature of dockworker employment and benefit administration. *See id.*

Thus far, Plaintiffs have taken deposed one individual, after the parties had fully briefed the summary judgment motion and before the hearing. On April 23, 2026, Plaintiffs deposed a

PMA Vice President, William Bartelson, who had proffered a declaration supporting Defendants' summary judgment motion. *Id.*, ¶ 6. During that deposition, Bartelson testified regarding several topics, including how dockworkers are paid for required trainings:

Q. What entity pays dockworkers for the hours spent in training, if you know?

A. The Joint Port Labor Relations Committee entity.

*Id.*, Ex. C at 118:21–24. Mr. Bartelson further explained that the Joint Port Labor Relations Committee is a "joint labor management committee comprised of three or more representatives of the employer and three or more representatives of the union." *Id.* at 124:6–12.

C. **Defendants file the ERISA MSJ in October 2025, Plaintiffs oppose in January 2026, and Plaintiffs do not request a continuance before the May 19, 2026 hearing.**

As Defendants had repeatedly indicated they would, they moved for summary judgment based on ERISA preemption on October 21, 2025. *See* ECF No. 147. Plaintiffs filed a full opposition on January 30, 2026, which included two "expert" declarations and several plaintiff declarations. *See* ECF No. 155. Nowhere in their opposing papers did Plaintiffs assert that they lacked necessary facts or evidence to oppose the motion, nor did they suggest that any additional discovery was required. *See id.*

After Plaintiffs filed their original opposition, the Court ordered them to file an amended opposition because the original did not comply with the local rule requiring evidentiary objections to be included in the brief. *See* ECF No. 162. Plaintiffs filed an amended opposition on April 2, 2026. *See* ECF No. 163. As with their original opposition, Plaintiffs' amended opposition did not request Rule 56(d) relief, did not contend that essential facts were unavailable, and did not ask to continue the hearing to obtain additional discovery. At no point before the May 19, 2026 hearing did Plaintiffs seek Rule 56(d) relief.

On May 19, 2026, the Court held an approximately one-hour-long hearing on the motion. *See* Miller Decl., ¶ 5, Ex. B. At no point during that hearing did Plaintiffs' counsel state that they lacked necessary facts or evidence or needed additional discovery. *See generally id.* The Court concluded the hearing by taking the matter under submission. *See id.* at 41:1.

## III.    LEGAL STANDARDS

Rule 56(d) provides a narrow avenue for relief to a nonmovant who, despite diligence, cannot present facts essential to oppose summary judgment. The rule requires the nonmovant to show by affidavit or declaration that, "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). To obtain relief, the nonmovant must do more than identify subjects for additional discovery or speculate that helpful evidence might exist. It must show "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).

The Ninth Circuit also requires diligence. A party seeking Rule 56(d) relief must show that it diligently pursued available discovery before seeking a continuance. *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989).

Finally, Rule 56(d) relief must be timely sought. A request for a continuance to obtain additional discovery must "be made prior to the summary judgment hearing." *Ashton-Tate Corp. v. Ross*, 916 F.2d 516, 520 (9th Cir. 1990). That timing requirement preserves the orderly summary-judgment process by requiring parties to identify any need for additional discovery before the motion is briefed, argued, and submitted. *Id.*

## IV.    ARGUMENT

The Court should deny Plaintiffs' Motion because it is untimely and baseless. The Motion is untimely because the Court has already heard oral arguments on the summary judgment motion and taken it under submission. Under Ninth Circuit precedent, this alone is a sufficient reason to deny Plaintiffs' request. The request is also baseless because Plaintiffs fail to identify the  specific facts or evidence that they could not have obtained through prior discovery that would preclude summary judgment.

### A.    Plaintiffs' Motion is untimely because Plaintiffs filed it only after the hearing on Defendants' ERISA MSJ.

A Rule 56(d) request for additional time to conduct discovery must "be made prior to the

summary judgment hearing." *Ashton-Tate*, 916 F.2d at 520; *see also Steffen v. City & Cnty. of San Francisco*, No. 17-CV-06396-DMR, 2020 WL 1082637, at *1, n.1 (N.D. Cal. Mar. 6, 2020) (denying Rule 56(d) request because it was not made before the summary judgment hearing); *In re Jacoby*, No. 2:18-AP-01117-MT, 2021 WL 6882437, at *8 (C.D. Cal. Dec. 29, 2021) (same); *Dodson v. Munirs Co.*, No. CIV. S-13-0399 LKK, 2013 WL 4828597, at *1 (E.D. Cal. Sept. 9, 2013) ("A motion under Rule 56(d) must be brought before the summary judgment hearing."); *Gonzalez v. Garibay*, No. 09-CV-1080 W (MDD), 2012 WL 12875366, at *3 (S.D. Cal. Aug. 1, 2012) ("relief under Rule 56(d) must be sought *before* the summary-judgment hearing") (emphasis in original). This rule exists because "the process of evaluating a summary judgment motion would be flouted if requests for more time, discovery, or the introduction of supplemental affidavits had to be considered even if requested well after the deadline set for the introduction of all information needed to make a ruling has passed." *Ashton-Tate*, 916 F.2d at 520.

Plaintiffs had ample opportunity to comply with that rule. From the start, they knew Defendants intended to move for summary judgment based on ERISA preemption. They requested and received an extended briefing schedule specifically to obtain discovery and prepare their opposition. And they filed two full oppositions without ever suggesting that essential facts were unavailable. Plaintiffs still did not seek relief in the weeks before oral argument. And even at the hearing, when the Court questioned the evidentiary basis for Plaintiffs' payroll-practice theory, Plaintiffs did not suggest that the record was incomplete or that they had been unable to obtain discovery on essential facts, nor did they ask for additional discovery.

Instead, Plaintiffs waited until more than two weeks after the hearing to request Rule 56(d) relief for the first time—after the Court had already taken Defendants' summary judgment motion under submission. That tactic is exactly what *Ashton-Tate* prohibits. Plaintiffs do not seek a continuance so they may oppose summary judgment in the first instance; rather, they seek to reopen discovery and supplement their opposition after belatedly appreciating which issues understandably concerned the Court at oral argument. Allowing such a sequence would undermine the orderly adjudication of summary judgment motions and reward the very lack of diligence Rule 56(d)'s timing requirement is designed to prevent. Plaintiffs' untimely request

should be denied on this basis alone.

**B.      Plaintiffs had ample opportunity to obtain the discovery they now seek.**

Plaintiffs' Rule 56(d) request is also improper because they already had ample time to pursue pre-opposition discovery. The party seeking a Rule 56(d) continuance must show that it "diligently pursued its previous discovery opportunities." *Big Lagoon Rancheria v. California*, 789 F.3d 947, 955 (9th Cir. 2015), as amended on denial of reh'g (July 8, 2015); *see also Lemberg v. JPMorgan Chase Bank, N.A.*, No. 17-CV-05241-JSC, 2019 WL 1975441, at *4 (N.D. Cal. Apr. 16, 2019) (Corley, J. ) (denying Rule 56(d) request because the plaintiff "ha[d] not shown that she diligently pursued discovery").

Discovery has been open since June 2024. Since then, Plaintiffs knew about Defendants' ERISA preemption defense. In discovery to date, Plaintiffs propounded written discovery and received substantial productions exceeding 14,000 pages (more than six months before Plaintiffs filed their summary-judgment opposition), including Plaintiffs' personnel and wage records, ERISA plan documents, trust agreements, collective bargaining agreements, and other materials central to Defendants' ERISA-preemption arguments. Plaintiffs therefore had notice of the relevant issues, ample opportunity to pursue discovery regarding them, and in fact propounded and received discovery—all before opposing summary judgment.

Plaintiffs also cannot claim surprise regarding the importance of ERISA preemption to this case. Defendants asserted ERISA preemption at the outset, reiterated the defense in multiple joint case management statements, and expressly advised Plaintiffs and the Court that Defendants intended to move for summary judgment on that basis. Defendants' proposed briefing schedule already gave Plaintiffs additional time to obtain whatever discovery they believed necessary to oppose the motion. Plaintiffs requested even more time, stating that they needed to "obtain discovery and take depositions," to which Defendants agreed. Miller Decl. ¶ 4, Ex. A. Plaintiffs also said they would seek a further extension if necessary "to get the necessary discovery to oppose the motion." *Id.* But Plaintiffs filed their opposition without ever requesting more time.

Plaintiffs' lack of diligence is further confirmed by the fact that they already explored in discovery several of the subjects listed in their motion. The topic of training is illustrative.

Plaintiffs now claim they need discovery to show that training is a non-ERISA benefit funded by PMA's operating account and therefore analogous to paid sick leave. But Plaintiffs already deposed Mr. Bartelson about training, including who pays dockworkers for training time. Bartelson testified that training hours are paid by the Joint Port Labor Relations Committee, not PMA. Miller Decl. Ex. C at 118:21–24. Thus, Plaintiffs' motion seeks discovery on issues they already probed.

### C. Plaintiffs' requested discovery concerns issues already presented and, in any event, does not satisfy Rule 56(d).

Plaintiffs' request also fails because the six topics they identify do not justify Rule 56(d) relief. Plaintiffs contend that the Court's questions at oral argument "identified certain factual and legal matters central to the payroll practice exemption analysis that went beyond the briefing." ECF No. 177 at 4:3–4. But the Court did not raise new issues. It tested whether Plaintiffs had evidence supporting the payroll-practice theory they had already advanced in their opposition. And even now, Plaintiffs do not, as required, identify specific facts that exist and would preclude summary judgment.

Rule 56(d) requires more than a list of broad topics for further inquiry. The moving party must identify specific facts further discovery would reveal, show that those facts exist, and explain why they are essential to opposing summary judgment. *Family Home*, 525 F.3d at 827; *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Relief is properly denied where the requested discovery is only "generically relevant," *Family Home*, 525 F.3d at 827, or where the request rests on "pure speculation," *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018). Plaintiffs' six proposed topics do not meet that standard.

### 1. "Identifying non-ERISA plans that Defendants maintain"

Plaintiffs' request to identify "non-ERISA plans" does not arise from any new issue raised by the Court. Defendants' motion explained that, in this unique interchangeable multiemployer, dispatch-based industry, paid-leave benefits for dockworkers are administered through ERISA-governed plans because the benefits require centralized administration and pooled funding. *See* ECF No. 147 at 5:19–11:6. Plaintiffs' opposition did not identify any comparable non-ERISA

paid-leave plan for dockworkers. And at the hearing, Plaintiffs' counsel conceded that all paid-leave benefit plans available to dockworkers are ERISA plans. *See* Miller Decl., Ex. B at 5:19–6:9.

Nor do Plaintiffs identify any specific facts further discovery would reveal. They do not identify any non-ERISA paid-leave plans they believe exist, any witness who would testify about the existence of one, or any document likely to establish one. Their new references to training and workers' compensation do not cure that defect. The relevant question is whether the multiemployer, centrally administered sick-leave regime Plaintiffs seek can be provided as a non-ERISA payroll practice.

Plaintiffs' Motion references training but identifies no training-related facts that would preclude summary judgment. If Plaintiffs are referring to training programs, ERISA expressly recognizes "apprenticeship or other training programs" as potential employee welfare benefits. 29 U.S.C. § 1002(1). If Plaintiffs mean wages paid for time spent in training, those payments are wages for time worked, not paid leave for an absence. As the Court recognized at the hearing, wages are not an ERISA-regulated benefit. *See* Miller Decl., ¶ B, Ex. 6:8. Plaintiffs' own discovery shows that PMA does not pay those training wages in any event: Mr. Bartelson testified that training hours are paid by the Joint Port Labor Relations Committee (a committee made up of union and employer representatives), not PMA. *See* Miller Decl. ¶ Ex. B at 118:21–24, 124:6–12. How training is handled therefore does not identify a non-ERISA paid-leave plan, does not support Plaintiffs' "general assets" theory, and would not defeat summary judgment.

Plaintiffs' unexplained references to workers' compensation fare no better. This industry is subject to the federal Longshore and Harbor Workers' Compensation Act, which separately governs compensation for covered workplace injuries. *See* 33 U.S.C. §§ 901 *et seq.* Plaintiffs identify no evidence that PMA pays any workers' compensation benefits to dockworkers or that, in this industry, such benefits are paid by anyone other than the employer responsible for the facility or work where the injury occurred. Workers' compensation does not show that Defendants can administer a multiemployer paid-sick-leave benefit for absences from work as a payroll practice outside ERISA.

**2.    "Clarifying how PSL can be paid to Dockworkers from general assets"**

Plaintiffs already argued how they believe PSL could be paid from "general assets." Their opposition relied on attorney Davis's and attorney McCarthy's declarations to assert that PMA could administer PSL through its payroll process using employer funds, which McCarthy characterized as general assets. *See* ECF Nos. 163 at 10:3–28; 155-1, ¶¶ 15–19; 155-2, ¶¶ 5-11, Ex. A. Defendants refuted that theory in reply. *See* ECF No. 169 at 2:21–7:12. The Court's questions at the hearing simply tested whether Plaintiffs had evidence and authority to support the theory they had already presented.

Plaintiffs still do not identify such evidence. They do not point to any existing policy, practice, agreement, account structure, or payment mechanism under which the sick-leave benefit they seek could be paid from the general assets of a single employer. Instead, Plaintiffs propose possible methods PMA or member companies could use to pay such benefits from pooled assets. *See* ECF No. 177 at 6:8–8:13. Those are litigation arguments, not facts. Plaintiffs do not show that any of those proposed methods exists in practice, is authorized by any CBA or statute, or would avoid the central problem that triggers ERISA preemption: Plaintiffs seek a centrally administered benefit based on aggregated work across multiple employers and funded by pooled contributions from multiple employers. Discovery into unspecified, hypothetical alternatives would not preclude summary judgment.

**3.    "Identifying the payor of PSL to Dockworkers when used"**

Plaintiffs likewise already argued who they believe should pay sick leave to dockworkers. Their opposition relied on attorney Davis's declaration, which asserted that "[w]hen an employee uses accrued sick pay, PMA can invoice the PSL hours on the weekly payroll invoice to the Defendant employer for whom the employee accrued the most PSL hours." ECF No. 155-2 at 5, ¶ 10. At the hearing, the Court correctly identified the problem: Plaintiffs' proposed "highest accrued balance first" rule is not based in any state statute, local ordinance, CBA, plan document, or industry practice; as the Court put it, Plaintiffs' counsel was "just making that up." *See* Miller Decl., Ex. B at 9:7–10:8.

Plaintiffs' motion still does not identify existing facts or evidence that would establish

which employer is legally responsible for PSL when a dockworker is absent on a day when the worker has no fixed schedule and has not been dispatched. That omission is critical. Plaintiffs' claims depend on the premise that PSL can be charged to a particular employer while remaining a payroll practice. But Plaintiffs identify no statute, ordinance, CBA provision, dispatch rule, payroll policy, or industry practice that determines the payor in that circumstance. At most, Plaintiffs speculate that the dispatch system might be adapted to identify a payor. That is not a discoverable fact and Rule 56(d) does not authorize discovery based on such conjecture, nor could such speculation defeat summary judgment.

### 4.   "Confirming the status as 'general assets' from which PSL is paid"

Plaintiffs also already argued that payments under their proposed scheme would constitute payments from "general assets." They relied on attorney McCarthy's assertion that she had "seen multiemployer groups, through an agent like PMA, provide paid sick leave to employees as a payroll practice, paid from the same operating account used to pay other wages, using employer general assets." *See* ECF No. 155-1, ¶ 18. Defendants objected to and refuted that testimony in reply. *See* ECF No. 155 at 20:19–20; ECF No. 169 at 8:14–10:10. The Court did not introduce a new "general assets" issue; it asked Plaintiffs if they had any support beyond McCarthy for that assertion and their counsel identified none.

Plaintiffs' request to "confirm" general-asset status is not a request for missing facts. It is a request to search for authority to support a legal conclusion. Plaintiffs already filed their opposition brief (twice), providing their legal arguments on this point. There is no justification for a further brief to rehash the same points. Beyond that, even if this can be considered a factual inquiry, Plaintiffs fail to meet their Rule 56(d) burden to identify evidence they could develop in discovery that would show that pooled funds collected by PMA to pay a multiemployer sick-leave benefit would remain the general assets of individual employers for purposes of the payroll-practice regulation. Unless Plaintiffs can identify facts they could discover showing that the benefits would be paid from a single employer's general assets, rather than through a centrally administered multiemployer arrangement, their proposed discovery would not affect the preemption analysis.

### 5. "Examples of other multiemployer groups that provide their employees with Paid Sick Leave"

Plaintiffs already attempted to rely on supposed examples of other multiemployer groups that provide paid sick leave as a payroll practice. Their opposition asserted that "Ms. McCarthy has seen multiemployer groups, through an agent like PMA, provide paid sick leave to employees as a payroll practice." *See* ECF No. 155 at 11:9–11. Defendants refuted that claim in reply. *See* ECF No. 169 at 8:24–9:7.

Plaintiffs still identify no comparable example. At the hearing, Plaintiffs referenced Operating Engineers in Rhode Island, but they offered no evidence that Operating Engineers' employment bears any meaningful resemblance to West Coast dockworker employment. They did not show that those workers obtain assignments through dispatch, lack fixed schedules, work shift-by-shift for different employers, or present the same problem of identifying which employer, if any, would have employed the worker on the day of an absence. *See* Miller Decl., Ex. B at 11:12–12:13, 25:1–5. Plaintiffs' desire to search for a better example than the one they already presented does not show that such an example exists, much less that it would defeat summary judgment.

### 6. "Defendants' federal contractor status"

Finally, Plaintiffs' request for discovery into Defendants' federal-contractor status is irrelevant to the pending motion and was not raised by the Court. Plaintiffs do not assert a claim under Executive Order 13706. Their operative complaint asserts only state and local paid-sick-leave claims, derivative claims, and retaliation claims. Discovery into whether any Defendant may be a federal contractor would not supply facts essential to opposing summary judgment on those claims.

Nor would the requested discovery affect Defendants' ERISA-preemption motion. Whether some Defendant may have separate obligations under a federal Executive Order would not establish that Plaintiffs' operative state and local claims avoid ERISA preemption. It also would not show that the multiemployer sick-leave regime Plaintiffs seek can be administered as a non-ERISA payroll practice.

Beyond this, Plaintiffs identify no specific federal contract, contract clause, covered work, covered employee, or Defendant-specific obligation that would affect the claims at issue. Rule 56(d) does not authorize belated, speculative discovery into a collateral theory that would not defeat summary judgment.

In sum, Plaintiffs' six topics confirm that their motion is an impermissible request for a do-over, not a proper Rule 56(d) request. These topics they identify were already in the parties ERISA MSJ briefing or are irrelevant to the pending motion, and Plaintiffs still do not identify any specific facts that exist and would preclude summary judgment. Rule 56(d) does not permit a party to reopen discovery after full briefing and argument based on the hope that something helpful might turn up.

**D.       Rule 56(e) does not grant Plaintiffs a post-hearing do-over.**

Plaintiffs' reliance on Rule 56(e) also does not help them. Rule 56(e) is not an independent discovery-continuance or supplemental-briefing mechanism. It identifies options available to the Court when a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" under Rule 56(c). Fed. R. Civ. P. 56(e). In that circumstance, the Court may give the party an opportunity to properly support or address the fact, consider the fact undisputed for purposes of the motion, grant summary judgment if the motion and supporting materials show entitlement to judgment, or issue another appropriate order. *Id.*

Rule 56(e) does not apply here. Plaintiffs are not asking for an opportunity to correct a discrete failure to support or address a particular factual assertion under Rule 56(c). They are not seeking to supplement a deficient citation, authenticate an exhibit, clarify an evidentiary objection, or respond to a fact they inadvertently failed to address.

Instead, Plaintiffs filed two full oppositions to Defendants' ERISA-preemption motion on the record they chose to present. Plaintiffs' problem is not that they failed to "properly support or address" a particular fact within the meaning of Rule 56(e). Their problem is that the Court's questions revealed to them that their payroll-practice theory they presented and fully briefed lacks evidentiary and legal support.

Rule 56(e) does not provide a vehicle for that kind of post-hearing reset. If Plaintiffs

believed they could not present facts essential to justify their opposition, Rule 56(d) supplied the mechanism for requesting relief, and it required Plaintiffs to do so before the summary-judgment hearing, with a showing of diligence, specificity, and materiality. Plaintiffs never invoked Rule 56(d) and may not now bypass its requirements by invoking Rule 56(e) after the hearing and recasting their desire for additional discovery and supplemental briefing as an "opportunity" to support facts.

Accepting Plaintiffs' position would collapse Rule 56(d) into Rule 56(e). Any nonmovant who fully briefed and argued summary judgment could wait to see which issues concern the Court, then invoke Rule 56(e) to reopen discovery and file a new opposition. That is not Rule 56(e)'s purpose. The Court should reject Plaintiff's request to apply it here.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion for Leave.

Dated: June 17, 2026

SEYFARTH SHAW LLP


By: /s/Jesse L. Miller
Jesse L. Miller
Ian H. Morrison
Taylor D. Horn

Attorneys for Defendants
PACIFIC MARITIME ASSOCIATION, et al.