Roxanne A. Davis, SBN 132128
Frank Hakim, SBN 173365
DAVIS*GAVSIE & HAKIM, LLP
100 Wilshire Boulevard, Suite 700
Santa Monica, California 90401
Telephone:  (310) 789-2240
Facsimile:   (310) 789-2249
Roxanne@DGHLawyers.com
Frank@DGHLawyers.com

Attorneys for Plaintiffs
PAMELA HILL, JERI STEWART, RHONDA JOHNSON,
SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON,
DERRICK YOUNG, CORY BROWN, STEPHEN JOHNSON,
DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS,
HAROLD GREEN, JR., DANIELLE THOMPSON,
OLANDO GRAVES, and KIMBERLY HUGHES, individually, on behalf of other aggrieved
employees, and on behalf of all similarly situated employees

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA HILL, JERI STEWART, RHONDA JOHNSON, SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON, DERRICK YOUNG, CORY BROWN, STEPHEN JOHNSON, DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS, and HAROLD GREEN, JR. individually, on behalf of other aggrieved employees pursuant to California Private Attorneys General Act of 2004, and PAMELA HILL, JERI STEWART, RHONDA JOHNSON, SHYRAUN RUFFIN, SHEILA SEALS, LA TINA BLACKMON, DERRICK YOUNG, CORY BROWN, STEPHEN JOHNSON, DARRYL SHAW, ROYCE GAVIN, PAUL WILLIAMS, HAROLD GREEN, JR., DANIELLE THOMPSON, OLANDO GRAVES, and KIMBERLY HUGHES, individually, on behalf of all similarly situated employees; <br><br> Plaintiffs, <br> vs. <br><br> PACIFIC MARITIME ASSOCIATION, a California corporation; APM TERMINALS | CASE NO.: 3:24-cv-00336- JSC <br><br> Assigned for all purposes to: <br> Judge Jacqueline Scott Corley <br><br> CLASS ACTION <br><br> PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO: (1) PERMIT LIMITED DISCOVERY, (2) SUBMIT SUPPLEMENTAL EVIDENCE AND (3) SUBMIT SUPPLEMENTAL BRIEFING BEFORE RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> [F.R.C.P. Rules 1, 56(d) and (e)] <br><br> Hearing Date: July 16, 2026 <br> Time: 10:00 a.m. <br> Ctrm: 8 – 19th Floor <br><br> 4AC Filed:  June 19, 2025 <br> Complaint Filed: October 10, 2023 <br> Trial: None set |

1

**NORTH AMERICA INC., a corporation; APM TERMINALS PACIFIC LLC, a Limited Liability Company; EVERPORT TERMINAL SERVICES, INC., a corporation; FENIX MARINE SERVICES, LTD., a Limited Company; INTERNATIONAL TRANSPORTATION SERVICE, LLC, a Limited Liability Company; LBCT, LLC, a Limited Liability Company; MAERSK A/S, a corporation; MARINE TERMINALS CORPORATION, a corporation; METRO CRUISE SERVICES LLC, a California corporation; PACIFIC TERMINAL SERVICE COMPANY, LLC, a Limited Liability Company; PASHA STEVEDORING & TERMINALS, INC., a California corporation; PASHA STEVEDORING & TERMINALS, L.P., a California Limited Partnership; SSA CONTAINERS, INC., a corporation; SSA MARINE, INC., a corporation; SSA PACIFIC, INC., a corporation; SSA TERMINALS, LLC, a Limited Liability Company; STEVEDORING SERVICES OF AMERICA 811-WA, an unknown business entity; TOTAL TERMINALS INTERNATIONAL, LLC, a Limited Liability Company; TRAPAC, LLC, a Limited Liability Company; YUSEN TERMINALS LLC, a California Limited Liability Company; BENICIA PORT TERMINAL COMPANY, a California corporation; PACIFIC CRANE MAINTENANCE COMPANY, LLC, a Limited Liability Company; WEST COAST TERMINAL AND STEVEDORE, INC., a California corporation; and DOES 1 through 100, inclusive,**

   **Defendants.**

///

///

///

///

///

///

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION AND STATEMENT OF FACTS…………………………...………..……..1

II.  LEGAL STANDARD………………………………………………………………...…..1

    A.  FRCP Rule 56(D) Grants This Court Discretion To Give Plaintiffs An Opportunity To Present Facts Essential To Justify Their Opposition, The Court May:
(1) Defer Considering The Motion Or Deny It;
(2) Allow Time To Obtain Affidavits Or Declarations Or To Take Discovery; Or
(3) Issue Any Other Appropriate Order………………………………………...……1

    B.  Rule 56(E) Grants This Court Discretion To Give Plaintiffs an Opportunity To Properly Support Or Address Assertions of Facts………………………………………………..5

III.  ARGUMENT……………………………………………………………………………6

    A.  PLAINTIFFS WERE DILIGENT IN SEEKING DISCOVERY, BUT DEFENDANTS WERE EVASIVE AND DELAYED………………………………………………………6

    B.  PLAINTIFFS WERE DILIGENT IN BRINGING THIS MOTION BASED ON ISSUES RAISED AT THE HEARING BY THE COURT………………………………………….8

    C.  PLAINTIFFS HAVE IDENTIFIED SPECIFIC FACTS THAT EXIST WHICH WOULD PRECLUDE SUMMARY JUDGMENT…………………………………………………10

    (1)  Identifying non-ERISA plans that Defendants maintain...…………………………10

        (A) Training…………………………………………………………………...........10

        (B) Worker's Compensation Insurance or Self-Insurance………………………….11

    (2)  Clarifying how PSL can be paid to Dockworkers from General Assets…………………12

    (3)  Identifying The Payor of PSL to Dockworkers When Used and Methods of Dispatch Which Result in the Ability to Determine Employers-of-the-Day…………………….14

    (4)  Examples of other multiemployer groups that provide their employees with Paid Sick Leave…………………………………………………………………………………..15

    (5)  Defendants' federal contractor status……………………………………………..15

IV.  CONCLUSION……………………………………………………………………….....15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alaska Airlines, Inc. v. Oregon Bureau of Lab.,*
122 F3d 812 (9th Cir. 1997)…………………………………………………………...…12

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)…………………………………………………………………...…...3

*Ashton-Tate v. Ross,*
916 F.2d 516 (9th Cir. 1990) …...……………………………….…………………….…2,3,5

*Barrentine v. Arkansas Best Freight System,*
450 U.S. 735 (1981) …...……………………….…………………………8 Fn7,15 Fn12

*Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation,*
323 F.3d 767 (9th Cir. 2003) …...………………………………………………...…...3

*Cal. ex rel. Cal. Dep't of Toxic Subs. Control v. Campbell,*
138 F.3d 772 (9th Cir. 1998) …...………………………………………………...…...2

*Diaz v. Am. Tel. & Tel.,*
752 F.2d 1356 (9th Cir. 1985) …...………………………..…………………………4

*Dodson v. Munirs Co.,*
No. CIV. S-13-0399 LKK, 2013 WL 4828597, at *1 (E.D. Cal. Sept. 9, 2013)…………………3

*Earl v. Nielsen Media Research, Inc.,*
658 F.3d 1108 (9th Cir. 2011) …...……………………………..…………………….2

*Fort Halifax Packing Co. v. Coyne,*
482 U. S. 1 (1987) .................... ...................... ..... ...........................8

*Gonzalez v. Garibay,*
No. 09-CV-1080 W (MDD), 2012 WL 12875366, at *3 (S.D. Cal. Aug. 1, 2012) ……………...3

*Head v. Wilkie,*
(9th Cir. 2019) 784 Fed.Appx. 503…...………………………….…………………...…4

*In re Jacoby,*
No. 2:18-AP-01117-MT, 2021 WL 6882437, at *8 (C.D. Cal. Dec. 29, 2021)…………………3

*Lemberg v. JPMorgan Chase Bank, N.A.*,

　　N.D. Cal., Apr. 16, 2019, No. 17-CV-05241-JSC 2019 WL 1975441….…………………..…4

*Mackey v. Pioneer Nat. Bank,*

　　867 F.2d 520 (9th Cir. 1989) …...……………..……………………………………………10

*Massachusetts v. Morash,*

　　490 U.S. 107 (1989)……………………………………………………………………….8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

　　475 U.S. 574 (1986)……………………………………………………………………….2

*Metabolife Int'l, Inc. v. Wornick,*

　　264 F.3d 832 (9th Cir. 2001)…………………………………………………………….3

*Ramsey v. Zhang*,

　　2021 WL 2012252 (S.D. Cal. May 20, 2021)………………………………………………4

*Rutledge v. Pharm. Care Mgmt Ass'n,*

　　592 U.S. 80 (2020)……………………………………………………………………….8

*Salem v. Kraut,*

　　C.D. Cal., May 6, 2026, No. 8:25-CV-01544-FWS-ADS, 2026 WL 1288653…………….…..…4

*Soremekun v. Thrifty Payless, Inc.,*

　　509 F.3d 978 (9th Cir. 2007)………………………………………………………….…..2

*State of Cal. V. Campbell,*

　　138 F.2d 772 (9th Cir. 1998)……………………………………………………………….3

*Steffen v. City and County San Francisco,*

　　No. 17-CV-06396-DMR, 2020 WL 1082637, at *3, n.1 (N.D. Cal. Mar. 6, 2020) …………..3

*Troester v. Starbucks Corp.,*

　　387 F.Supp.3d 1019 (C.D. Cal. 2019)……………………………………………………….9

*Troester v. Starbucks Corp.,*

　　5 Cal.5th 829 (2018)……………………………………………………………………….9

**Statutes**

29 C.F.R. §2510.3-1(b)……………………………………………………………………..13

29 C.F.R. 2510.3-1(b)(3)(iv)……………………………………………………………….10

Fed. R. Civ. P. 56(c)…………………………………………………………………..…2,3,5

Fed. R. Civ. P. 56(d) ........................... ..................................................... .........................1,2,4,5,8

Fed. R. Civ. P. 56(e) ............................ ............................................... ..............................4,5

Fed. R. Civ. P. 56(f) ............................ ............................................... .....................……...10

Labor Code §§ 245, et seq…………………………………………………………………14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND STATEMENT OF FACTS

As set forth in Plaintiffs' Motion for Leave, the limited issues on which Plaintiffs seek additional discovery, supplemental evidence and briefing were raised for the first time by the Court at the hearing on Defendants' Motion for Summary Judgment ("MSJ") or raised for the first time in Defendants' Reply in support of MSJ. As soon as Plaintiffs' counsel were made aware that the Court had questions about the issues that were not briefed by Plaintiffs, Plaintiffs diligently obtained the hearing transcript, which took a couple of days, and then promptly filed this Motion for Leave to permit additional discovery, supplemental evidence and briefing before the Court decides Defendants' MSJ, just 15 days after the hearing.

The evidence Plaintiffs seek could change the outcome of the MSJ. Evidence that Defendants maintain a non-ERISA plan, such as Training, demonstrates that they could provide Paid Sick Leave ("PSL") in the same way. Evidence of alternative methods for an employer to pay PSL directly, from each employer, or by PMA as a joint employer or employer of record, after which they could (but do not have to) seek reimbursement from employers on a pro-rata basis, (a scenario not addressed in the 47-year-old Department of Labor ("DOL") opinion letter), could and should change the outcome of the MSJ as these are viable methods for Defendants to administer PSL as a payroll practice. Evidence confirming that monies paid by PMA member employers to PMA's payroll account remains traceable by PMA, are not contributed to a trust fund, and are therefore the employer's "general assets," could and should change the outcome of the MSJ on what constitutes employer "general assets." Evidence on how the identity of the employer who pays PSL can be determined is relevant to the direct employer payment of PSL, which could and should change the outcome of the MSJ. Accordingly, Plaintiffs respectfully request leave of the Court to obtain additional discovery and file supplemental evidence and briefing in support of their Opposition to Defendants' MSJ.

### II. LEGAL STANDARDS

    **A.** **FRCP Rule 56(D) Grants This Court Discretion To Give Plaintiffs An Opportunity To Present Facts Essential To Justify Their Opposition. The Court May: (1) Defer Considering The Motion Or Deny It; (2) Allow Time To Obtain Affidavits Or Declarations Or To Take Discovery; Or (3) Issue Any Other Appropriate Order.**

1

This Court should grant the instant Plaintiffs' Motion under FRCP Rules 56(d) and (e) because it is brought promptly, meets the criteria established for such a request, seeks to adjudicate the matter fully on the merits, and is within this Court's discretion.

The U.S. Supreme Court and the Ninth Circuit have consistently held that summary judgment motions should be decided on the merits, after discovery. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence," *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007), and will draw inferences from the facts in the light most favorable to the nonmoving party, *see Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[A] district court should continue a summary judgment motion upon a good faith showing by affidavit that the continuance is needed to obtain facts essential to preclude summary judgment." *Cal. ex rel. Cal. Dep't of Toxic Subs. Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

Here, Plaintiffs have shown (1) the specific facts that they can elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion.

Contrary to Defendants' contention, FRCP Rule 56(d) DOES NOT require that relief be sought before the summary judgment hearing because the case on which all the cases they cite relied on *Ashton-Tate v. Ross*, which was decided in 1990 under a previous version of FRCP Rule 56 that required opposing affidavits to be filed "prior to the day of hearing." *Ashton-Tate v. Ross*, 916 F.2d 516, 519-520 (9th Cir. 1990).[1] The *Ashton-Tate* court relied on language in the old FRCP 56 Rule that no longer exists.[2] The 2010 amendments to FRCP Rule 56 significantly changed the Rule, completely restructured Rule 56, rewriting subsections (c), (d), and (e**), deleting that time limit**. None of the cases cited by

---

[1] Rule 56(c) from 1990 contained a time limit to file affidavits – "The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party **prior to the day of hearing** may serve **opposing affidavits**." The 2010 amendments deleted this timing rule entirely. The current Rule 56 does not contain this same limitation.

[2] Citing 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2740 (emphasis added), "*Rule 56(c) states that affidavits filed under either subdivision must be filed prior to the day of the hearing.*" *Ashton-Tate v. Ross*, 916 F.2d at 519-520 and basing the conclusion on the "implication" "that the time constraint in Rule 56(c) should apply." *Id.*, 916 F.2d at 520.

Defendants addressed the significant change in the 2010 amendments deleting the limit referenced in *Ashton-Tate*.

Since Rule 56(c) no longer contains any time constraints, this logic and holding is no longer applicable. Even so, the Court in *Ashton-Tate* considered part of the supplemental affidavits (as it pertained to source code, in that case). *Ashton-Tate,* 916 F.2d at 520.

**Every single one of the decisions that Defendants cited followed *Ashton-Tate* without comparing the change in the 2010 amendments to FRCP 56 to the 1990 version,** including:

(a) *Steffen v. City and County San Francisco*, No. 17-CV-06396-DMR, 2020 WL 1082637, at *3, n.1 (N.D. Cal. Mar. 6, 2020)

(b) *In re Jacoby*, No. 2:18-AP-01117-MT, 2021 WL 6882437, at *8 (C.D. Cal. Dec. 29, 2021)

(c) *Dodson v. Munirs Co.*, No. CIV. S-13-0399 LKK, 2013 WL 4828597, at *1 (E.D. Cal. Sept. 9, 2013) - Nevertheless, this case favors Plaintiffs in this case: The court denied summary judgment without prejudice to give an adequate opportunity for non-moving party to conduct discovery. As Plaintiffs did in the instant motion, the *Dodson* court cited *Metabolife* and the U.S. Supreme Court, stating:
> "**the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery** where the nonmoving party has not had the opportunity to discovery information that is essential to its opposition." *Metabolife* at 846, citing and quoting *Anderson v. Liberty Lobby*, at 250, n.5, Accord *State of Cal. v. Campbell*, 138 F.2d 772, 779 (9th Cir. 1998).[3]

(d) *Gonzalez v. Garibay*, No. 09-CV-1080 W (MDD), 2012 WL 12875366, at *3 (S.D. Cal. Aug. 1, 2012)

Further, most of the foregoing cases Defendants cited are distinguishable and inapposite. *Steffen* is distinguishable because unlike the plaintiff in *Steffen*, Plaintiffs have identified specific facts that exist that would preclude Summary Judgment. (N.D. Cal., Mar. 6, 2020, No. 17-CV-06396-DMR) 2020 WL 1082637, at *1.) *In re Jacoby*, is distinguishable as plaintiff did not provide any affidavits indicating what information continued discovery would reveal, and why those facts would defeat defendant's MSJ. (C.D. Cal., Dec. 29, 2021, No. 2:18-AP-01117-MT) 2021 WL 6882437, at *3). *Gonzalez v. Garibay* (S.D. Cal., Aug. 1, 2012, No. 09-CV-1080 W (MDD)) 2012 WL 12875366, at *4, is distinguishable because defendant's MSJ was filed 2 ½ months after fact discovery ended. In this case, the Court has not yet set a deadline for the completion of Fact Discovery.

---

[3] Rule 56(d) should be construed as "requiring, rather than merely permitting discovery" per *Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773-774 (9th Cir. 2003), to enable the non-moving party to present facts essential to justify the opposition. FRCP 56(d).

3

*Lemberg v. JPMorgan Chase Bank, N.A.* (N.D. Cal., Apr. 16, 2019, No. 17-CV-05241-JSC) 2019 WL 1975441, at *4, also cited by Defendants, is inapplicable. In *Lemberg*, the ATM machine closed on the pro se plaintiff's finger, and plaintiff sued the bank for negligence, products liability and premises liability. Unlike in this case, (1) the plaintiff in *Lemberg* failed to submit a declaration or provide reasons why she could not obtain the discovery sought during the fact discovery period, (2) both parties had filed multiple motions regarding discovery issues and the Court held numerous hearings regarding the same, and (3) plaintiff did not demonstrate that the evidence she claimed she needed to oppose defendant's summary judgment motion would preclude summary judgment. Significantly, in *Lemberg*, the Court gave plaintiff a number of chances. After dismissing the action for failure to prosecute, the Court subsequently granted plaintiff's motion to reopen the action, gave Plaintiff another chance to file her amended complaint by a specified date, granted plaintiff's motion to file her complaint late, and ultimately denied defendant's motion to dismiss as to another claim.  *Id*. *1-2.

The above cases cited by Defendants do not address or deprive the Court of its discretion to give Plaintiffs an opportunity to conduct the requested discovery and provide additional evidence and briefing under Rule 56(e).

Other Ninth Circuit cases support discovery in this case. In *Head v. Wilkie* (9th Cir. 2019) 784 Fed.Appx. 503, 506, the Court held that where "summary judgment was ordered but the non-moving party was improperly denied discovery, we are not in a position to view all the necessary evidence in the light most favorable to that party." *Diaz* [v. *Am. Tel. & Tel.*, 752 F.2d 1356, 1362 (9th Cir. 1985)]…We therefore vacate the grant of summary judgment on Head's Title VII claims and remand to allow Head an opportunity to pursue discovery. *Id*. at 1364."

In *Salem v. Kraut* (C.D. Cal., May 6, 2026, No. 8:25-CV-01544-FWS-ADS) 2026 WL 1288653, at *4, citing *Head v. Wilkie*, *supra,* the Court denied defendant's MSJ without prejudice, granted plaintiff relief under Rule 56(d), in part because plaintiffs were set to depose key witnesses in their case and the discovery cutoff was weeks away. The Court reserved decision on the merits of plaintiffs' claims until after the discovery process was completed. See *Ramsey v. Zhang*, 2021 WL 2012252, at *2 (S.D. Cal. May 20, 2021) ("…the [c]ourt should be able to decide any summary judgment motion on a more complete record.")

4

**B.** **Rule 56(e) Grants This Court Discretion To Give Plaintiffs an Opportunity To Properly Support Or Address Assertions of Facts.**

FRCP 56(e) gives the Court the power to consider information even after the hearing: "If a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact…" Regarding FRCP Rule 56(e), the Committee Notes to the 2010 amendments to FRCP Rule 56 state, in pertinent part:

> "As explained below, summary judgment cannot be granted by default even if there is a complete failure to respond to the motion, much less when an attempted response fails to comply with Rule 56(c) requirements. Nor should it be denied by default even if the movant completely fails to reply to a nonmovant's response. Before deciding on other possible action, subdivision (e)(1) recognizes that **the court may afford an opportunity to properly support or address the fact.** In many circumstances **this opportunity will be the court's preferred first step**…"

Rule 56(d) and (e) support deciding the harsh remedy of summary judgment on all the evidence – interpreting evidence in the light most favorable to Plaintiffs. Rule 56(e) encourages decisions after giving the nonmoving party an opportunity to address the assertions of fact.

Prior to the hearing, Plaintiffs believed they had presented facts essential to justify their opposition. At the hearing, the Court identified a number of areas that the Court required further explanation. After obtaining the transcript of the hearing, Plaintiffs diligently, less than 2 weeks after receiving the transcript, Plaintiffs filed the instant motion pursuant to Rule 56(d) and (e).[4]

Plaintiffs have not previously requested the opportunity to do further discovery or supplement evidence and briefing in this case. Defendants fail to cite any case justifying the denial to Plaintiffs this important opportunity. The cases citing *Ashton-Tate* were all inapt.

Since the current version of FRCP Rule 56(d) and (e) give the Court discretion to permit the requested discovery and briefing, and also based on the case law mentioned in Plaintiffs' Motion and herein, as Plaintiffs acted diligently to bring these matters to the attention of the court, and the evidence sought, as explained below and in Plaintiffs' Motion, could change the outcome of the MSJ, Plaintiffs respectfully request that this Motion be granted in its entirety.

---

[4] Defendants mislead this Court about Plaintiffs' Opposition - Plaintiffs filed one opposition but a few days later, amended to incorporate objections to Defendants' declarations in one document upon the Court's Order. Plaintiffs did not file "two full" oppositions.

## III. <u>ARGUMENT</u>

### A. <u>PLAINTIFFS WERE DILIGENT IN SEEKING DISCOVERY, BUT DEFENDANTS WERE EVASIVE AND DELAYED</u>

This is the first time Plaintiffs have made a request for extension of time to conduct discovery and submit supplemental briefing in this case. Discovery is currently open, and Plaintiffs are pursuing discovery. (Declaration of Roxanne A. Davis, filed in support of Plaintiffs' Motion for Leave ("Davis Decl. #4"), ¶2)[5]

Plaintiffs diligently pursued discovery in this case. Plaintiffs propounded Interrogatories, Requests for Production of Documents and Things ("RFPs"), Requests for Admissions ("RFAs"), took a deposition, defended a deposition, and notified Defendants of 3 additional upcoming depositions, including a FRCP 30(b)(6) deposition. (Davis Decl. #4, ¶3, Exh. 1) In August 2024, Plaintiffs propounded Interrogatories and 53 RFPs on Defendants. In October 2024, Defendants served blanket objections to all of Plaintiffs' Requests for Production of Documents, agreed they "will produce" documents to some categories, and gave blanket objections without a single response to Plaintiffs' Interrogatories. Between 10/24 and 6/3/26, Defendants produced documents on a rolling basis in 4 separate productions, the latest production with more than 200 documents, including documents dated 2023 and 2024. (Davis Decl. #4, ¶3) In the time following receipt of Defendants' blanket objections, Plaintiffs met and conferred with Defendants, sending 4 lengthy meet and confer letters and conducting 2 Zoom meetings with defense counsel regarding Defendants deficient responses. (Davis Decl. #4, ¶4, Exh. 2) Each time, Defendants promised to get back to Plaintiffs with further information and documents and agreed not to use the lapse of time as a defense to a motion to compel. (Davis Decl. #4, ¶4) It was not until 6/2/26 that Defendants for the first time provided Plaintiffs with supplemental responses to some of the RFPs and Interrogatories that Plaintiffs had requested. To date, Defendants have not yet provided a further response indicating whether they have produced **all responsive documents** to all of Plaintiffs' RFPs. (Davis Decl. #4, ¶5, Exh. 3) For example, in response to Plaintiffs' RFP No. 49 seeking "All DOCUMENTS that are relevant to each Defendant's defense of this lawsuit,"

---

[5] The Decl. of Roxanne A. Davis filed in support of Plaintiffs' Opp. to Defendants MSJ is referred to as Davis Decl. #1. (ECF No. 155-2) Decl. of R.A. Davis filed in support of Plaintiffs' Objections to New Evidence, filed in support of Plaintiffs' Opp. to Defendants' MSJ is referred to as Davis Decl. #2 (ECF No. 170-1). Decl. of R.A. Davis filed in support of Plaintiffs' Motion for Leave is referred to as Davis Decl. #3 (ECF No. 177-1).

6

Defendants initially provided a blanket objection, then on 6/2/26, provided the following supplemental response:

> **SUPPLEMENTAL RESPONSE TO NO. 49:**
> Defendant reincorporates the foregoing objections and responses in providing its supplemental response. Without waiving these objections, Defendant responds as follows: Defendant is continuing to conduct a reasonable and diligent search for documents responsive to this Request. **To the extent additional responsive, non-privileged documents are located, Defendant will produce them and supplement this response**.

Defendants *STILL* have failed to confirm they have produced all responsive documents to many categories, including No. 49, above. (Davis Decl. #4, Exh. 3) Plaintiffs intend to pursue the inadequate discovery responses.[6] In any event, the documents that Defendants produced do not contain the information that Plaintiffs are now requesting. (Davis Decl. #4, ¶5)

Plaintiffs also took a 3.5-hour deposition of William Bartelson, a PMA Vice President. Defendants took a 3.5-hour deposition of Kim McCarthy, Plaintiffs' expert witness. (Davis Decl. #4, ¶6, Exh. 1) Plaintiffs served Defendants with a deposition notice for FRCP 30(b)(6) representatives seeking information related to the topics herein. Plaintiffs' counsel has requested from defense counsel dates for depositions of defense party-affiliated witnesses including Michael Wechsler, PMA's CFO, Parin Jhaveri, PMA's VP of IT. Defense counsel has not yet confirmed the dates. (Davis Decl. #4, ¶7, Exh. 1) Plaintiffs have a meeting scheduled with defense counsel on June 25, 2026 to confirm dates for these depositions. On June 9, 2026, Plaintiffs served 220 Requests for Admissions on Defendants covering the matters raised in this Motion, among others. (Davis Decl. #4, ¶7, Exh. 1)

---

[6] See also, Davis Decl. #4, Exh. 3:
RFP NO. 23: PLAINTIFFS' pay records, including paystubs, for the RELEVANT TIME PERIOD.
RFP NO. 30. All DOCUMENTS that RELATE TO PLAINTIFFS' claim of Violation of Los Angeles Municipal Code §§187.00, et seq.
RFP NO. 35. All DOCUMENTS that RELATE TO PLAINTIFFS' claim of Violation of California Business & Professions Code §§17200, et seq.
RFP NO. 41. All DOCUMENTS, memoranda and correspondence between and among DEFENDANTS and relating to Sick Pay, from January 1, 2014 to the present.
RFP NO. 47. All DOCUMENTS reflecting the joint employer and/or co-employer relationship between or among DEFENDANTS.
**Defendants gave blanket objections to all of the foregoing and did not respond** except No. 23. As to RFP No. 23, Defendants have not produced all of Plaintiffs' paystubs.

7

Plaintiffs have shown by declaration that since the specific areas for supplementation referenced herein were beyond the briefing and first raised at the May 19, 2026 Court hearing, Plaintiffs could not present facts essential to address these issues and justify their opposition. (Davis Decl. #3, ECF No. 155-2¶¶2-10). Accordingly, per FRCP Rule 56(d) the Court may (1) defer considering the motion or deny it; and/or (2) allow Plaintiffs time to obtain affidavits or declarations or to take discovery. *Ibid*. Thus, this Court should permit Plaintiffs to conduct the requested discovery and submit the evidence and briefing.

### B.   PLAINTIFFS WERE DILIGENT IN BRINGING THIS MOTION BASED ON ISSUES RAISED AT THE HEARING BY THE COURT

At the 5/19/26 hearing on Defendants' MSJ, the Court indicated that there were a number of issues that were not addressed in the briefing that the Court apparently deemed essential to oppose summary judgment. Plaintiffs did not have an opportunity to obtain the discovery they now seek on these issues. The hearing was fast-paced and lasted an hour. Plaintiffs' counsel ordered the transcript the next day. Plaintiffs then promptly filed the instant Motion for Leave, just 15 days after the hearing on Defendants' MSJ. (Davis Decl. #4, ¶8) At the time of filing their Opposition, Plaintiffs believed their Opposition showed that there was a dispute of material fact whether the PSL policy could be administered as a payroll practice exception. [7] (Davis Decl. #4, ¶8)

Defendants had been vague on the basis for the ERISA motion throughout this case. In June 2024, when Defendants first mentioned they intended to bring a FRCP Rule 12(c) motion based on ERISA preemption (not an MSJ), Plaintiffs' counsel asked Defendants what was the basis for their ERISA motion. (Defendants never filed the 12(c) motion.)  All Defendants responded was with 3 cases: *Fort Halifax Packing Co. v. Coyne, Massachusetts v. Morash,* and *Rutledge v. Pharm. Care Mgmt Assn*. Defendants did not mention or discuss the payroll practice exemption at that time. (Davis Decl. #4, ¶9, Exh. 4) In all 3 of the cases cited by Defendants, the Court ruled ERISA did NOT pre-empt the state

---

[7] Plaintiffs proposed a PSL policy in the Opposition that was a fair, equitable, reasonable and practical solution to enforce these Dockworkers' non-waivable statutory rights to PSL (*see, Barrentine v. Arkansas Best Freight System*, 450 U.S. 735, 745 (1981), by permitting Dockworkers to use earned and accrued PSL for the employer for whom the employee worked most frequently first since this **workforce worked and continues to work on a recurring basis for the same 2 to 6 employers** (ECF No. 137, ¶¶6-21; No. 155-4, ¶3; No. 155-5, ¶3; No. 155-6, ¶5; No. 155-7, ¶6). Plaintiffs believed their expert declarations filed in support of their Opposition to summary judgment were sufficient to show that a payroll practice could be adopted by Defendants, paying PSL as normal compensation from the employer's general assets, thus defeating summary judgment.

law. None of these cases pertained to Paid Sick Leave laws. Further, all 3 of these cases state that ERISA only pre-empts state laws that "relate to" a covered employee benefit plan, meaning they have a connection with or reference to such a plan. Plaintiffs reasonably understood that Defendants did not have a "covered employee benefit plan" relating to PSL nor did the PSL law have any reference or connection to such a plan. Plaintiffs further believed and understood that the payroll practice exemption to ERISA should apply in this case.  Indeed, at the Court hearing on Defendants' MSJ, the Court acknowledged that **Defendants do not have an ERISA plan for PSL**.  (Davis Decl. #4, ¶9)

The first time Defendants mentioned the payroll practice exemption was in their MSJ, relying entirely on a declaration of their ERISA plan expert witness, Gerald Crews, who admitted PSL could be provided but it was most practical to be done in an ERISA plan. Defendants only made general arguments that Plaintiffs refuted in their Opposition to Defendants' MSJ.  **Defendants have NOT identified any statute, ordinance, or case that requires that in a workplace where employees work on a recurring basis for the same 2 to 6 employers, the payor of PSL has to be the employer for which an employee would have worked had they not called in sick. Statutory wage rights put the burden on the employer, not the employee, to figure out how they will pay their employees the statutory wage – here, PSL.** *Troester v. Starbucks Corp.*, 387 F.Supp.3d 1019 (C.D. Cal. 2019), citing with approval *Troester v. Starbucks Corp.*, 5 Cal.5th 829, 848 (2018) ("[W]e decline to adopt a rule that would require the employee to bear the entire burden of any difficulty" in recording and paying employees for regularly occurring wages.)

Defendants first articulated in their Reply to MSJ that some employees do not know their employer for the day "until they complete the dispatch process." (ECF No. 169, at 7:12-14)  This is a false statement with regard to large groups of Dockworkers who know who their employer will be on any given day, such as Steady Dockworkers, Dockworkers who work for one employer and are not Steady, and Dockworkers who know their employer before they go to work. For the remaining employees, Defendants admit that once the Dockworkers "complete the dispatch process," they will know their employer of the day. Accordingly, Plaintiffs seek discovery into the dispatch process so as to confirm the employer of the day for days Dockworkers are out sick.

For the first time at the hearing, the Court raised questions that Defendants had not raised in their MSJ (e.g., non-ERISA plans, how PSL can be paid to Dockworkers from general assets, examples of

9

other multiemployer groups that provide their employees with Paid Sick Leave), as well as questions about issues Defendants raised for the first time in their Reply (identifying the employer on a sick day when completing the dispatch process), so Plaintiffs did not have an adequate opportunity to conduct discovery on these matters in time to incorporate them into the Opposition.

In contrast to the plaintiff in *Mackey,*[8] Plaintiffs have identified the specific facts or evidence that they could not have obtained through discovery prior to filing the Opposition that would preclude SJ.

**C.    PLAINTIFFS HAVE IDENTIFIED SPECIFIC FACTS THAT EXIST WHICH WOULD PRECLUDE SUMMARY JUDGMENT**

At the 5/19/26 hearing, the Court identified the following matters, which Plaintiffs had not had a previous opportunity to address, conduct discovery on, or brief:

**(1)    Identifying Non-ERISA Plans that Defendants Maintain**

Nowhere in Defendants' briefing have they ever raised "non-ERISA plans," and Defendants do not dispute this. Plaintiffs' counsel made clear in the Declaration filed in support of this Motion that she was unclear on what the Court meant when it asked about "non-ERISA plans." (ECF No. 177, at 9:30-4, fn 2; ECF No. 177-1, at 4:4-7).

**(A)    Training**

Defendants claim training falls under the definition of an ERISA plan, but intentionally omit the fact that payment for hours that Dockworkers spend in Training is a non-ERISA benefit which can be paid as a payroll practice, exempt from the definition of an "employee welfare benefit plan" per 29 C.F.R. 2510.3-1(b)(3)(iv), which states in pertinent part:

> **(b) Payroll practices.** For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include—
> …(3) Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) performs no duties; for example—
> …(iv) Payment of compensation on account of **periods of time** during which an employee performs little or no productive work **while engaged in training**…

---

[8] Defendants cite *Mackey*, but it is distinguishable from this case. In *Mackey*, plaintiff requested and was granted a previous extension of time to conduct discovery. *Mackey v. Pioneer Nat. Bank*, 867 F2d 520 (9th Cir. 1989) "The district court granted one extension to Mackey to conduct his discovery." Id at 523. Yet, Mackey did not avail himself of FRCP Rule 56(f) [now (d)]. *Mackey v. Pioneer Nat. Bank,* 867 F2d at 523-524. Here, Plaintiffs are availing themselves of Rule 56(d) by this Motion.

**Evidence on the entity which pays for Dockworkers' Training hours and the manner in which Defendants pay dockworkers for hours spent in training can be used to show that it is possible for Defendants to pay PSL as a payroll practice, in the same way.** Plaintiffs have advised Defendants they want to take the deposition of Defendant PMA's CFO, Michael Wechsler. (Davis Decl. #4, ¶10, Exh. 1) Per Northern District of California Civil Local Rule 30-1, the parties are scheduled to speak on Thursday, June 25, 2026. (Davis Decl. #4, ¶10)

Contrary to Defendants' contention in their Opposition to this Motion, Plaintiffs have not done discovery on Training (ECF 178, page 11:1-6 of 17). Further, Defendants once again misrepresent the truth as William Bartelson, Defendant PMA's Vice President, testified that he had **no personal knowledge regarding how dockworkers are paid for time spent in Training**.[9]  In fact, Bartelson testified that he did not know which entity paid dockworkers for training! (Davis Decl. #4, ¶11, Exh. 5) Instead, the evidence points to **PMA as the payor for Training**, as Dockworker pay records show "PMA Training," not the Joint Port Labor Relations Committee, as Defendants misleadingly suggest. (Davis Decl. #4, ¶12, Exh. 6) Plaintiffs seek discovery and to submit briefing and evidence on which entity pays Dockworkers for training hours and how the payments are made to Dockworkers, what type of account, etc. This relates to a possible way to provide workers with PSL, which would defeat summary judgment.

### (B)  Worker's Compensation Insurance or Self-Insurance

Worker's compensation is another type of non-ERISA benefit that Plaintiffs want to inquire about for the same reasons as Training - it may be paid by PMA from PMA's general assets.[10] The federal Longshore and Harbor Workers' Compensation Act ("LHWCA") excludes dockworkers covered by a state workers' compensation law and employed exclusively to perform office clerical, secretarial, security, or data processing work, which includes Clerks, Watchmen and other similar roles. Longshore

---

[9] Bartelson testified that **he did not know which entity pays for Training hours on a dockworker's pay stub** – this was the very next question after the one cited by Defendants in their Opposition. (Davis Decl. #4, ¶11, Exh. 5 - Bartelson Depo, p. 118:25-119:4.) Bartelson testified had **never seen a Dockworker's paystub with Training listed or the payor**. (Exh. 5, p. 119:5-25.) Further, Bartelson has never been a Dockworker. (Exh. 5, p. 120:19-21.) Accordingly, **Bartelson does NOT have personal knowledge of the entity which pays for training**. (Davis Decl. #4, ¶11, Exh. 5)

[10] Workers' compensation replaces about 2/3 of wages. DWC - I was injured at work - Temporary disability benefits

and Harbor Workers' Compensation Act Frequently Asked Questions | U.S. Department of Labor. Thus, the LHWCA does not apply to all Dockworkers. To the extent that Defendants are already providing non-ERISA Training and Workers' Compensation benefits from their general assets to Dockworkers, as a payroll practice, Plaintiffs can show that PSL can be provided as a non-ERISA payroll practice which could be dispositive of Defendants' MSJ. If the Court is considering this information in making its decision on Defendants' MSJ, Plaintiffs should have a chance to do discovery, provide further evidence and briefing on the topic.

**(2)    Clarifying How PSL Can Be Paid to Dockworkers from General Assets and Confirming the Status as "General Assets" from which PSL can be Paid**

Plaintiffs made a proposal which it thought would be adequate to address all concerns of the Court, but the Court raised a specific question as to whether monies (in this case, for PSL) that are paid from an employer's general assets into a payroll account with other employer monies can still be considered the originating employer's general assets.  Defendants never raised this point, and their Opposition does not point to any such reference. Plaintiffs seek to obtain discovery and submit evidence and briefing to clarify how PSL can be paid to Dockworkers from employer's general assets as an operating expense which can be paid by PMA member employers directly or by PMA, based on 3 possible models:

(1) PSL paid by PMA as a wage paying agent, joint employer, or employer of record,[11] from its general assets, as set forth in Plaintiffs' Motion for Leave (ECF No. 177, at 10:8-12:13). PMA could seek reimbursement from member companies, a "repayment agreement," which constitutes payment from "general assets," which has been recognized as a payroll practice by the Ninth Circuit in in *Alaska Airlines, Inc. v. Oregon Bureau of Lab.,* 122 F3d 812, 813 (9th Cir. 1997); or

(2) PMA member companies can pay PSL to Dockworkers directly, from the member company's own general assets; or

(3) PMA can invoice the member company for which the Dockworker would have worked (per Section II(C)(3), below.) The Employer then pays from its general assets to PMA's payroll

---

[11] Plaintiffs contend PMA is a **joint employer, direct, indirect and/or integrated employer** of Dockworkers (Fourth Amended Complaint ("4AC"), ¶¶22-28).  DOL Opinion Letters cited by Defendants in their MSJ from 46 and 47 years ago are distinguishable and do not contradict Plaintiffs' claim for PSL as a payroll practice. The second letter cited by Defendants, DOL Opinion 80-20A, from 1980, supplemented the foregoing letter, but never considered facts showing PMA was a **joint employer or employer-of-record** for Dockworkers.

12

account, which Plaintiffs seek discovery to show it contains traceable general assets of the employer.

In Plaintiffs' Notice of Deposition of FRCP 30(b)(6) representatives, Plaintiffs seek information related to the foregoing, including but not limited to Areas of Inquiry Nos. 3, 9-13, 16. (Davis Decl. #4, Exh. 1)

Plaintiffs' proposed methods do NOT pool funds, as Defendants wrongly repeatedly contend. Defendants also falsely claim, without any support, that the DOL regulation on payroll practices did not apply to them, alleging that 29 C.F.R. §2510.3-1(b) only applies to single employers. (ECF No. 169, at 7:23-25.) The Regulations say **nothing of the sort**. 29 C.F.R. § 2510.3-1(b) is not limited to single employers: it applies to any "employee welfare benefit plan" that meets the statutory definition, regardless of whether the plan is sponsored by one employer or multiple employers.

Bartelson lacks a basis for making nearly all of the statements in his declaration filed in support of Defendants' MSJ, and Plaintiffs objected based on his lack of personal knowledge, lack of foundation, hearsay, speculative, and irrelevant statements, much of which were contradicted by Plaintiffs' evidence. (ECF No. 163, at 31:21-32:18)

Plaintiffs are proposing viable possibilities by which Defendants can comply with the law, instead of violating it, and pay Plaintiffs' and other Dockworkers' PSL.

Defense counsel took expert witness Kim McCarthy's statements out of context and omitted important facts and testimony from Ms. McCarthy's deposition transcript, and Plaintiffs referenced the missing excerpts in Plaintiffs' Objections to Defendants' new evidence and Declaration of Ian Morrison (ECF No. 170, at 4:13-23) and in Davis Decl. #2 (ECF No. 170-1, at 5-43) Ms. McCarthy testified that she knew of several locals of the International Union of Operating Engineers ("IUOE") that provided PSL as a payroll practice, paid from the employer's general assets. (*Id*. at 11:16-22) Ms. McCarthy testified also that if the monies are paid into a payroll account, they may still be considered the "general assets" of an employer if it's a "convenience account with trackable data." (ECF No. 170-1, at 34:1-7,11-12) Plaintiffs seek discovery as to the trackability of each employer's payment from their general assets to PMA's payroll account. This would establish that employer monies transmitted to PMA for purpose of paying that employer's payroll obligation remains said employer's general assets until the monies are paid out to the employees. Defendants admit that Plaintiffs should be permitted to obtain

13

discovery showing that the PSL could be paid from a single employer's general assets. Plaintiffs also seek this discovery. Plaintiffs also seek to provide supplemental briefing on this subject.

**(3)     Identifying The Payor of PSL to Dockworkers When Used and Methods of Dispatch Which Result in the Ability to Determine Employers-of-the-Day**

PSL can be paid by any of Plaintiffs' employers. LC 246(n) states:

"**An employer shall provide payment for sick leave taken** by an employee no later than the payday for the next regular payroll period after the sick leave was taken."

There is no provision that states that the PSL must be paid by the employer that the employee was working for on the day of the absence, and Defendants cite no authority for this position. Plaintiffs' suggested PSL Policy complies with this requirement. This is not required by ERISA, the payroll practice exemption, or Labor Code §§245, et seq.

For the first time in Defendants' Reply in support of MSJ, Defendants argued that Dockworkers do not know "which employer they will work for **until they complete the dispatch process**." (ECF No. 169, at 7:12-14) Plaintiffs should have an opportunity to do discovery and submit evidence and briefing on identifying the employer and the completion of the dispatch process.

While Plaintiffs do not agree there is a requirement to identify the employer on the day the employee is out sick, Plaintiffs can identify the employer for several categories of employees on the day they are out sick. Further, Plaintiffs seek to explain how the employer can be identified for the remaining Dockworkers on days they need to be out sick, through the dispatch process.

In the course of discovery, Plaintiffs sought discovery of names and contact information for Dockworkers (Davis Decl. #4, ¶13, Exh. 1), but after repeated meet and confer efforts, to date, Defendants have failed to produce Dockworker contact information, most recently in April 2026 postponing the discovery until after the Court's Order on Defendants' MSJ (Davis Decl. #4, ¶13, Exh. 7). Plaintiffs currently seek names, contact information and number of Steady Dockworkers, those who work for the same employer for extended periods of time who are not Steady, those who are assigned jobs the day before, those who obtain assignments that last 5 or 7 days in a row, making the employer certain for that time period,  Casual Longshore workers who go to the dispatch hall to get their assignments and work for the same employer on regular basis, Registered and Casual Watchmen, and information about the dispatch processes for each type of Dockworker. Further, the fact that the dispatch

system can be adapted to identify a payor is something this Court should consider in deciding whether it is possible for Defendants to pay PSL as a payroll practice, which could be dispositive, and Defendants seek the opportunity to conduct discovery on the foregoing and to submit further evidence and briefing in support of Plaintiffs' Opposition to Defendants' MSJ.

### (4)  Examples of other Multiemployer Groups that Provide their Employees with Paid Sick Leave

At the hearing on Defendants' MSJ, the Court ask about other multiemployer groups which provide PSL as a payroll practice. Plaintiffs seek discovery to show IUOE or other multiemployer groups provide PSL as a payroll practice, including how they work for several employers and how they are dispatched to show their situation is comparable to Dockworkers. Plaintiffs also seek to provide briefing to show other multiemployer groups provide their employees with PSL, and so could Defendants. Obtaining this evidence would show Defendants could (but choose not to) provide PSL as a payroll practice, and defeat summary judgment.

### (5)  Defendants' Federal Contractor Status

Discovery into whether any Defendant may be a federal contractor would supply facts essential to opposing summary judgment on those claims as they would be bound to provide PSL through a federal law which could not be preempted by ERISA, and Plaintiffs could seek leave to amend to add this claim, which would defeat SJ on ERISA preemption. Plaintiffs seek discovery into Defendants' federal contracts, contract clauses, covered work, covered employees, and Defendant-specific obligations that would affect the claims at issue.

## VIII.  CONCLUSION

Plaintiffs have shown they were diligent, specified the facts they hoped to elicit from further discovery, shown those facts exist and shown how they are essential to oppose summary judgment Plaintiffs should be given a fair opportunity to present such facts. For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for leave to conduct discovery, file supplemental evidence and briefing prior to the Court ruling on Defendants' MSJ. Plaintiffs request at least 6 months to obtain discovery and another 2 months to file supplemental evidence and briefing. The Court's ruling on Defendants' MSJ will affect about 20,000 Dockworkers who do not receive PSL when they are

unable to work due to sickness or doctor's appointments, or to take care of a loved one, a right which all other California employees have (including PMA employees).[12]

DATED:  June 24, 2026                    DAVIS*GAVSIE & HAKIM, LLP
                                         By:  /s/ *Roxanne A. Davis*
                                              **Roxanne A. Davis, Esq.**
                                              **Frank Hakim, Esq.**
                                              **Attorneys for Plaintiffs**

---

[12] The U.S. Supreme Court recognized the importance of non-waivable statutory labor rights that "…devolve on plaintiffs as individual employees, not as members of a collective organization. *Barrentine v. Arkansas Best Freight System*, *supra*, at 737, 745.  The wage laws set forth in the California Labor Code are "minimum substantive guarantees" (*Id*. at 737…because the Legislature has categorically forbidden the modification of any provision of these laws. [citation omitted]." *Zavala v. Scott Brothers Dairy, Inc*. (2006) 143 Cal.App.4th 585, 596. Therefore, Plaintiffs' PSL wage claims in this case should not be preempted.

16